**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAVVA DELIYANNIDES, FRED RAMOS, FAITH PRITCHARD, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIMEO.COM, INC.,<br><br>Defendant. | Case No. 1:26-cv-01915<br><br>Honorable Judge John Robert Blakey |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VIMEO.COM, INC'S**
**MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

A. Vimeo Offers Technology Tools to Its Third-Party Website Customers. ..... 2

B. The Terms. ..... 3

LEGAL STANDARD ..... 7

ARGUMENT ..... 8

A. Plaintiffs Consented to a Valid Written Agreement to Arbitrate. ..... 9

1. Ramos consented to a valid arbitration agreement. ..... 9

2. Pritchard consented to a valid arbitration agreement. ..... 10

B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement, an Issue Delegated to the Arbitrator. ..... 13

C. This Action Must be Stayed as to Plaintiffs Ramos and Pritchard. ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**


*Chambers v. Aviva Life & Annuity Co.*,
2013 WL 1345455 (N.D. Ill. Mar. 26, 2013)....8

*Coatney v. Ancestry.com DNA, LLC*,
93 F.4th 1014 (7th Cir. 2024)....7, 8

*Coons v. Yum! Brands, Inc.*,
672 F. Supp. 3d 626 (S.D. Ill. 2023)....8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....9

*Forby v. One Tech., LP*,
2016 WL 1321194 (S.D. Ill. Apr. 5, 2016)....10

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....7

*Gupta v. Morgan Stanley Smith Barney, LLC*,
934 F.3d 705 (7th Cir. 2019)....7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....14

*Johnson v. Orkin, LLC*,
928 F. Supp. 2d 989 (N.D. Ill. 2013)....8, 13

*Kashkeesh v. Microsoft Corp.*,
679 F. Supp. 3d 731 (N.D. Ill. 2023)....7, 8

*Marzano v. Proficio Mrtg. Ventures, LLC*,
942 F. Supp. 2d 781 (N.D. Ill. 2013)....9

*Metro. Life Ins. Co. v. O'Malley*,
392 F. Supp. 2d 1042 (N.D. Ill. 2005)....8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....13

*Phila. Indem. Co. v. Bellin Mem'l Hosp.*,
2023 WL 6388208 (N.D. Ill. Sep. 29, 2023)....9

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....15

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*TopStepTrader, LLC v. Oneup Trader, LLC*,
2018 WL 1859040 (N.D. Ill. Apr. 18, 2018) .......... 9

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Trimas Corp.*,
531 F.3d 531 (7th Cir. 2008) .......... 13

**Statutes**

9 U.S.C. § 4 .......... 8

Federal Arbitration Act .......... 3, 7

Federal Wiretap Act .......... 1, 2, 13

Video Privacy Protection Act .......... 1, 2

Defendant Vimeo.com, Inc. ("Vimeo") submits this memorandum of law in support of its motion to compel arbitration as to Plaintiffs Faith Pritchard and Fred Ramos ("Arbitrating Plaintiffs"). The Court should first resolve this motion as to Arbitrating Plaintiffs who created Vimeo accounts and agreed to Vimeo's terms of use containing a valid and enforceable arbitration agreement. After resolving this motion, this Court should address Vimeo's motion to dismiss—filed concurrently with this motion—which disposes of the remaining plaintiff's claims.

## INTRODUCTION[1]

Plaintiffs Savva Deliyannides, Faith Pritchard, and Fred Ramos ("Plaintiffs") bring sweeping class claims against Vimeo for alleged violations of the Video Privacy Protection Act ("VPPA") and the Federal Wiretap Act ("FWA"), as well as invasion of their privacy, based on Plaintiffs' use of third-party websites ("OTT Websites"). These OTT Websites use Vimeo's back-end technology as their infrastructure to host, sell subscriptions to, and stream their own video content to their customers. ¶ 39.[2] Plaintiffs allege that these OTT Websites use tracking pixels to disclose Plaintiffs' search history and video viewing habits to third-party companies. ¶¶ 10-11, 22-23, 32-33. Nevertheless, Plaintiffs have sued Vimeo—not the OTT Websites that allegedly disclosed their personally identifiable information without authorization. But the Arbitrating Plaintiffs cannot pursue their claims in this Court because independent of their use of the OTT Websites, they also created Vimeo accounts. By creating accounts and continuing to use Vimeo, they agreed to Vimeo's Terms, which contain a valid and enforceable arbitration agreement

[1] Unless otherwise indicated, all internal citations and quotations are omitted and all emphases are added. Citations to "Ex. _" refer to the exhibits attached to the Declaration of Melissa Nezhnik filed concurrently with this motion ("Nezhnik Arb. Decl.").

[2] References to "¶ __" are to the Complaint (ECF No. 1); unless noted otherwise, all emphases are added and internal citations or quotations are omitted.

covering these precise claims.[3] And the arbitration agreement delegates to the arbitrator all questions about arbitrability itself. The Court should compel Plaintiffs to arbitrate their claims.

## FACTUAL BACKGROUND

### A. Vimeo Offers Technology Tools to Its Third-Party Website Customers.

Vimeo is a leading internet-based video technology provider.[4] As relevant here, Vimeo offers a business-to-business ("B2B") service called "Vimeo OTT," an "over-the-top" platform that offers the technology and tools for launching a video subscription service. ¶¶ 60-61. These B2B customers—the OTT Websites—own and run the websites which use Vimeo OTT. Vimeo OTT is customizable, providing OTT Websites with the infrastructure to host, sell subscriptions, and stream video content to their subscribers. *Id.*; ¶ 65. OTT Websites can choose to use (or not use) any features available through Vimeo OTT.[5]

Each Plaintiff allegedly used one or more OTT Websites to view video content. ¶¶ 9, 21, 31. And each alleges that information about their search history and video viewing habits while on the OTT Websites were disclosed to "Third Parties," including Meta. ¶¶ 10-11, 22-23, 32-33. Plaintiffs allege that they, at some later point, received unsolicited advertisements—though Plaintiffs do not allege where or how they received these advertisements—and presume that their video watching must have been disclosed. ¶¶ 13, 25, 35. Based on these allegations, Plaintiffs allege that Vimeo—not the OTT Websites to which they subscribed—violated the VPPA, FWA, and their right to privacy.

---

[3] Vimeo has not uncovered any evidence that Plaintiff Deliyannides agreed to Vimeo's Terms. Vimeo reserves all rights, and waives none, to bring a motion to compel arbitration against Plaintiff Deliyannides and any unnamed class member if they agreed to Vimeo's Terms.
[4] *About*, VIMEO, https://vimeo.com/about (last visited April 27, 2026).
[5] *What is Vimeo OTT?*, VIMEO, https://perma.cc/M4MP-9LEG (last visited April 27, 2026).

**B. The Terms.**

Plaintiffs Ramos and Pritchard agreed to Vimeo's Terms by: (1) signing up for and maintaining active Vimeo accounts (both); and (2) continuing to use Vimeo after receiving email notice of Terms changes (Pritchard). Nezhnik Arb. Decl. ¶¶ 6-46. The Vimeo Terms are governed by New York law, and the arbitration provision is governed by the Federal Arbitration Act ("FAA"). *See, e.g.*, Ex. A, C, F, H-K (terms were at all times governed by NY law and the FAA).

Pritchard created her Vimeo account on April 11, 2017, and Ramos created his account on December 26, 2020. Nezhnik Arb. Decl. ¶¶ 12, 36. At all relevant times, users creating accounts needed to agree to Vimeo's then-operative Terms of Service ("Terms"). As shown below, users had to affirmatively click either the "Join with email" button or the "Join with Facebook" (later "Join with Google") button. Both buttons were positioned above a clear, conspicuous notice informing users that "by joining Vimeo, you agree to our Terms of Service and Privacy Policy." The words "Terms of Service" appeared in bright blue hyperlinked text against a contrasting background.




*Vimeo Sign-up Page – April 11, 2017 (Nezhnik Arb. Decl. ¶ 12 & Ex. B)*




*Vimeo Sign-up Page – December 27, 2020 (Nezhnik Arb. Decl. ¶ 36 & Ex. G)*

Beginning on December 12, 2019, Vimeo's Terms have contained a clear, conspicuous notice of a mandatory arbitration provision. Nezhnik Arb. Decl. ¶ 10. The notice was clearly demarcated upfront: "By using our Services and accepting this Agreement, you (1) agree to binding arbitration of these claims before a neutral arbitrator; and (2) waive your rights to go to court, have a jury hear your case, or participate as part of a class of plaintiffs with respect to such claims." Ex. A. The notice directed users to Section 11 for more details. *Id.*

**Vimeo Terms of Service Agreement**

Last Updated: December 12, 2019

This **Vimeo Terms of Service Agreement** (the "**Agreement**" or "**Terms of Service**") is made between Vimeo, Inc. ("**Vimeo**," "**we**," "**us**," or "**our**") and you, our customer ("**you**" or "**your**"). This Agreement governs your use of Vimeo.com and our VIMEO®-branded online video hosting and sharing services through our owned-and-operated websites, applications, and embeddable video players (collectively, the "**Services**").

**Notice**: Section 11 of this Agreement contains a mandatory ARBITRATION AGREEMENT for certain privacy claims that you or Vimeo could assert. By using our Services and accepting this Agreement, you (1) agree to binding arbitration of these claims before a neutral arbitrator; and (2) waive your rights to go to court, have a jury hear your case, or participate as part of a class of plaintiffs with respect to such claims.

*Vimeo Terms of Service, updated December 12, 2019*

Since December 12, 2019, Vimeo's Terms have required users to submit any "covered privacy claim" to binding arbitration. Nezhnik Arb. Decl. ¶¶ 34, 42 & Exs. A, C, F, H-K. "Covered Privacy Claims" include any dispute "arising out of or relating to (a) Vimeo's collection, use, storage, analysis, or transfer of Personal Information" (b) "an alleged breach of [Vimeo's] Privacy Policy"; (c) alleged data breach or unauthorized disclosure; or failure to comply with any privacy or data security right or obligation. Exs. A, C, F, H-K. "Personal Information," in turn, means "any information about you, including your registration information (e.g., email address), payment information, location information, device information, biometric identifiers or information, IP address, and your activities (***including viewing and search history***)[.]" *Id.*[6]

Thirty days after Vimeo's December 2019 Terms became effective, Vimeo notified users of the addition of the arbitration clause via a banner atop the Vimeo home page, with a blue hyperlink set against a black field. Nezhnik Arb. Decl. ¶ 26 & Ex. D. In both the banner and Terms, Vimeo advised users that by continuing to use their Vimeo accounts, they agreed to any modified Terms, which "supersede[] all prior understandings regarding the subject matter" of the Terms. *Id.*




*Vimeo Notification Banner, December 2019 – January 2020*

[6] When Pritchard created her Vimeo account in 2017, the Terms did not contain a mandatory arbitration clause. Nezhnik Arb. Decl. ¶ 10. However, Pritchard continued to utilize Vimeo following the addition of that clause, and received advanced email notice of the 2024 Terms, clearly informing her that continued use of Vimeo.com constituted assent to those Terms. Pritchard continued using Vimeo until at least November 2025. Nezhnik Arb. Decl. ¶ 24.

The arbitration provision in Vimeo's Terms remained substantially identical until August 15, 2024 ("2024 Terms"). Nezhnik Arb. Decl. ¶ 30; *compare, e.g.*, Ex. K *with* Ex. F. More than 30 days before the 2024 Terms became effective, on July 9, 2024, Vimeo sent emails to all users, notifying them of the 2024 Terms and stating that continued use of their accounts constituted assent to the 2024 Terms. Nezhnik Arb. Decl. ¶ 29. That email notice clearly advised users of changes to the Terms, provided a hyperlink to view the Terms, and "encourage[d]" users "to carefully review [the] new Terms of Service." Nezhnik Arb. Decl. ¶¶ 30 & Ex. E. The email specifically advised users that Vimeo was "implementing changes to [its] informal dispute resolution process and arbitration agreement." *Id.*

All iterations of the Terms from December 2019 through the present have contained the same: (1) definition of "Covered Privacy Claim," (2) broad delegation clause providing that the arbitrator decides all issues relating to the arbitrability of the dispute including the question of arbitrability, (3) class waiver; (4) New York choice of law clause; and (5) provision that the Federal Arbitration Act ("FAA") governs arbitration. In addition, all iterations of the Terms from December 2019 through the present have contained a highlighted notice on the first page alerting users to the existence of the arbitration provision.

The 2024 Terms are identical in all respects except they: (1) include a pre-arbitration informal pre-dispute resolution requirement; (2) change the arbitration administrator and applicable arbitration rules from JAMS to NAM; (3) include a batch arbitration provision for 10 or more individual arbitration demands of a substantially similar nature; and (4) includes a 30-day right to opt out of the arbitration agreement. Nezhnik Arb. Decl. ¶ 33-34 & Ex. F.

**Vimeo Terms of Service**

Actions

Last Updated: July 8, 2024

This **Vimeo Terms of Service Agreement** (the "**Agreement**" or "**Terms of Service**") is made between Vimeo.com, Inc. ("**Vimeo**," "**we**," "**us**," or "**our**") and you, our customer ("**you**" or "**your**"). This Agreement governs your use of Vimeo owned-and-operated websites, applications, and embeddable video players (collectively, the "**Services**"). This includes our Vimeo, Vimeo OTT, and Livestream services, but not our Magisto, Wibbitz, or WIREWAX services which are governed by separate online agreements.

**PLEASE READ CAREFULLY:** SECTION 11 OF THIS AGREEMENT CONTAINS PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND VIMEO, INCLUDING, AMONG OTHER THINGS, AN AGREEMENT TO INDIVIDUALLY ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT CERTAIN DISPUTES BETWEEN YOU AND VIMEO BE RESOLVED BY BINDING AND FINAL ARBITRATION UNLESS YOU OPT OUT WITHIN 30 DAYS. SECTION 11.4 ALSO CONTAINS CLASS ACTION AND JURY TRIAL WAIVERS. PLEASE READ SECTION 11 CAREFULLY. BY PURCHASING, ENGAGING WITH, OR OTHERWISE USING ANY VIMEO SERVICES, YOU EXPRESSLY AGREE THAT DISPUTES BETWEEN YOU AND VIMEO WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION, AND YOU HEREBY WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION. IF YOU DO NOT AGREE TO THESE TERMS AND CONDITIONS, PLEASE IMMEDIATELY CEASE USE OF ANY VIMEO SERVICES.

*Vimeo Terms of Service, updated July 8, 2024*

## LEGAL STANDARD

The FAA "reflects both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019). In enacting the FAA, Congress sought "to reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Where the parties have agreed to arbitrate their dispute, "the [FAA] requires courts to enforce covered arbitration agreements according to their terms." *Kashkeesh v. Microsoft Corp.*, 679 F. Supp. 3d 731, 733-34 (N.D. Ill. 2023); *see also Gupta*, 934 F.3d at 710 ("The [FAA] mandates enforcement of valid arbitration agreements.").

Courts "must compel arbitration under the FAA" when there is "(1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024) (citing 9 U.S.C. § 4) (same); *Kashkeesh*, 679 F. Supp. 3d at 733. Upon a showing of these elements, "[t]he

FAA requires courts to stay . . . proceedings and to compel arbitration . . . ." *Chambers v. Aviva Life & Annuity Co.*, 2013 WL 1345455, at *1 (N.D. Ill. Mar. 26, 2013). The burden is on the party opposing arbitration to demonstrate that the arbitration agreement is unenforceable. *Orkin*, *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1000 (N.D. Ill. 2013) (citing *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 227 (1987)). When deciding motions to compel arbitration:

> [C]ourts apply an evidentiary standard similar to . . . summary judgment, meaning that if the party seeking arbitration offers sufficient evidence to allow a factfinder to conclude that the parties agreed to arbitrate, the party opposing arbitration must identify facts showing a genuine dispute as to the existence of the agreement.

*Coons v. Yum! Brands, Inc.*, 672 F. Supp. 3d 626, 633-34 (S.D. Ill. 2023) (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Once an enforceable arbitration agreement is proven, "questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Coons*, 672 F. Supp. 3d at 634.

## **ARGUMENT**

The Court should compel arbitration because: (1) the Arbitrating Plaintiffs agreed to arbitrate their claims; (2) the claims fall squarely within the scope of Vimeo's arbitration provision; and (3) Plaintiffs filed this case without first seeking to arbitrate their claims.[7] *See Coatney*, 93 F.4th at 1019; *Kashkeesh*, 679 F. Supp. 3d at 733; *Metro. Life*, 392 F. Supp. 2d at 1045 (dismissing complaint *sua sponte* based on mandatory arbitration provision). The Court should enforce the arbitration agreement and direct the parties to arbitration. *See* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the

---

[7] By initiating this lawsuit, Plaintiffs concededly failed to arbitrate. *Metro. Life Ins. Co. v. O'Malley*, 392 F. Supp. 2d 1042, 1045 (N.D. Ill. 2005) ("[T]here is a demonstrable refusal to arbitrate, by virtue of [Plaintiff]'s initiation of this current action."); *Jennings v. Ed Napleton Elmhurst Imps. Inc.*, 2025 WL 461433, at *11 (N.D. Ill. Feb. 11, 2025) ("[A]s evidenced by the filing of this suit and [Plaintiff's] opposition brief, there has been a 'refusal to arbitrate.'").

terms of the agreement."); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original).

### A. Plaintiffs Consented to a Valid Written Agreement to Arbitrate.

Both the Arbitrating Plaintiffs entered into valid and binding arbitration agreements governed by New York law[8] and waived any right to pursue class-action claims.

#### 1. Ramos consented to a valid arbitration agreement.

When Ramos created his Vimeo account on December 26, 2020, he received notice in conspicuous, clear, uncluttered text that he was agreeing to Vimeo's then-effective Terms, last updated on December 15, 2020 ("2020 Terms"). Nezhnik Arb. Decl. ¶ 39 & Ex. G. The 2020 Terms contained an enforceable arbitration agreement explaining that, as to Covered Privacy Claims, Ramos "agree[d] to binding arbitration of these claims before a neutral arbitrator" and to "waive your rights to go to court." Nezhnik Arb. Decl. ¶ 42 & Ex. H.

The hyperlink to the Terms was plainly visible and underlined, contrasting with the surrounding text. *See* Nezhnik Arb. Decl. ¶ 39 & Ex. G. Courts applying New York law routinely recognize this type of agreement (a "sign-in wrap") as establishing a binding agreement. *E.g.*, *TopStepTrader, LLC v. Oneup Trader, LLC*, 2018 WL 1859040, at *4 (N.D. Ill. Apr. 18, 2018) ("Sign-in-wraps are regularly upheld where a hyperlink to the terms and conditions appears next

---

[8] All applicable Terms provide that New York law shall govern any disputes between the parties. Under Illinois choice of law rules, courts give effect to choice of law clauses to resolve whether an enforceable agreement to arbitrate exists. *See Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 792 (N.D. Ill. 2013). Here, the law of contract formation under New York and Illinois law are similar and lead to the same result. *See id*. Moreover, application of New York law would not violate fundamental Illinois public policy, and applying New York law conforms with Illinois choice of law rules by "respect[ing] a contract's choice-of-law clause." *Phila. Indem. Co. v. Bellin Mem'l Hosp.*, 2023 WL 6388208, at *16 (N.D. Ill. Sep. 29, 2023).

to the only button that will allow the user to continue use of the website."); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at app. A, *9 (S.D.N.Y. Nov. 20, 2017) (sign-in wrap created binding agreement where the linked terms were "clear and obvious," "with blue font indicating the hyperlink to the [Terms of Use]" the webpage was "uncluttered," and the link "appeared directly under" the button to proceed); *Forby v. One Techs., LP*, 2016 WL 1321194, at *1 (S.D. Ill. Apr. 5, 2016) (upholding online agreement that included an arbitration clause where below the button to proceed, "Terms and Conditions" were included along with language "By clicking on the 'Continue' button below, you agree to the [] Terms and Conditions . . . ."). Accordingly, Ramos agreed to arbitrate his claims under the 2020 Terms.

The 2020 Terms notified users that Vimeo may "update" the Terms by "posting a revised version on our website," and "by continuing to use our services, you accept any revised Agreement." Nezhnik Arb. Decl. ¶ 44 & Ex. H. Vimeo's records show that Ramos's most recent successful login for his Vimeo account occurred on October 27, 2021. At that time, the applicable Terms were dated June 16, 2021 ("June 2021 Terms"). Nezhnik Arb. Decl. ¶ 45. The arbitration provisions in the June 2021 Terms and 2020 Terms are identical. *Compare* Ex. H *with* Ex. K.

**2. Pritchard consented to a valid arbitration agreement.**

Pritchard also agreed to arbitrate her claims. In 2017, when Pritchard first agreed to the Terms, Vimeo did not yet mandate arbitration. Nezhnik Arb. Decl. ¶ 17. However, the Terms clearly advised Pritchard that Vimeo had the right to modify the terms, which would be effective when posted on Vimeo's site. *Id*.

When Vimeo added an arbitration clause to its Terms on December 12, 2019 ("December 2019 Terms"), it provided 30-day notice to all users via a banner at the top of its homepage stating: "We've updated our Terms of Service and Privacy Policy. By continuing to use our services, you accept these new policies." Nezhnik Arb. Decl. ¶ 26. The words "Terms of Service" in the banner

were set off in bright blue font against a black background and hyperlinked to the December 2019 Terms. This banner remained live for 30 days. Vimeo's Terms have contained a mandatory arbitration provision since December 2019. Nezhnik Arb. Decl. ¶ 10.




*Vimeo Notification Banner, December 2019 – January 2020*

From November 2020 to November 2025, Pritchard logged in to her Vimeo account more than a dozen times. Nezhnik Arb. Decl. ¶ 24 (last login was November 9, 2025). At all relevant times, Vimeo's Terms were hyperlinked on its homepage. Nezhnik Arb. Decl. ¶ 11.

Pritchard also agreed to Vimeo's current Terms, which became effective on August 15, 2024 ("2024 Terms"). On July 9, 2024, Vimeo sent email notice to all users, including Pritchard, notifying them of the 2024 Terms—and informing them that "by continuing to use Vimeo's services, you confirm that you have reviewed and agreed to the updated terms." Nezhnik Arb. Decl. ¶ 29. That email notice contained a prominent hyperlink, in bright blue text, to the 2024 Terms and "encourage[d]" users "to carefully review our new Terms of Service." Nezhnik Arb. Decl. ¶¶ 30 & Ex. E. The email specifically advised users that Vimeo was "implementing changes to [its] informal dispute resolution process and arbitration agreement." *Id.* These changes did not alter the essential fact that arbitration is required for Covered Privacy Claims. Nezhnik Arb. Decl. ¶ 34 & Ex. F. As noted above, the 2024 Terms contain the same broad delegation clause as prior

iterations, the same New York choice-of-law clause, the same class waiver, and provides that the FAA governs arbitration.

Under New York law, continued use of a platform after being notified of modified terms is a clear manifestation of assent to those terms. In *Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017), plaintiffs received an email alerting them to updated online terms; the email contained a hyperlink to view the updated terms and summarized certain changes. *Id.* at *3. The email notice informed the plaintiff that users "should delete their account" within 30 days if they did not want to be subject to the new terms. *Id.* Like Pritchard, the plaintiffs nonetheless continued to use their accounts. *Id.* As "the design and language used . . . reasonably put Plaintiffs on notice that the Terms were being updated and that by using the website 30 days after receipt of the email, Plaintiffs unambiguously assented to the Terms as a matter of law." *Id.* at *6; *see Pilon v. Discovery Comms. LLC*, 769 F. Supp. 3d 273, 287, 289-90 (S.D.N.Y. 2025) (applying equivalent California law and holding that because plaintiff was "'explicitly advised' that . . . continuing to use Discovery's service would 'constitute assent to the terms and conditions' . . . he unambiguously assented to that agreement as a sign-in wrap agreement"); *Ireland v. Gordy Tile, Inc.*, 2026 WL 594859, at *3 (9th Cir. Mar. 3, 2026) (email notice of updated terms informing users that continued use of defendant's website or apps constituted agreement to terms was sufficient to bind plaintiffs to arbitration agreement in updated terms); *Valle v. ATM Nat., LLC*, 2015 WL 413449, at *2 (S.D.N.Y Jan. 30, 2015) (notice of updated terms, including arbitration agreement, sent by letter created agreement to arbitrate when plaintiffs continued to use their account).

Accordingly, Pritchard agreed to arbitrate her claims, and the 2024 Terms apply.

### B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement, an Issue Delegated to the Arbitrator.

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Orkin*, 928 F. Supp. 2d at 1002. As the Seventh Circuit has noted, "[w]here the arbitration clause is broad, there is a presumption in favor of arbitrability." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008); *see also Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 753 (N.D. Ill. 2015) ("Arbitration clauses containing the phrase 'arising out of,' such as this one, are extremely broad and 'necessarily create a presumption of arbitrability'").

Here, Plaintiffs' claim falls squarely within the scope of the arbitration agreement. In every relevant version of the Terms, the arbitration clause applies to any "Covered Privacy Claim," which is defined as "any dispute arising out of or relating to (a) Vimeo's collection, use, storage, analysis, or transfer of your Personal Information; (b) an alleged breach of our Privacy Policy; (c) an alleged data breach or unauthorized disclosure of data or content; or (d) an allegation that Vimeo failed to comply with any privacy or data security right or obligation." Nezhnik Arb. Decl. Exs. A, C, F, H-K. Plaintiffs' VPPA, invasion of privacy, and Wiretap Act claims are clearly within scope—the core of Plaintiffs' complaint is the allegedly impermissible disclosure of their personally identifiable information to third parties. ¶¶ 10-11, 22-23, 32-33.[9]

[9] As detailed in the accompanying motion to dismiss, Vimeo disputes it had any role in a purported disclosure of Plaintiffs' video-watching history—all of which would, as a matter of fact, have been disclosed by the OTT Websites in their discretion. Nonetheless, Plaintiffs allege such claims against Vimeo, which is thus entitled to press the validity of those misguided claims in arbitration.

However, the Court need not decide if the claims fall within the arbitration agreement's scope (they do). Each applicable set of Terms delegates to the arbitrator exclusive authority to resolve any disputes about the agreement's scope. The 2020 and 2021 Terms explain: "The arbitrator will decide all questions relating to the dispute, including the question of arbitrability[.]" Nezhnik Arb. Decl. ¶¶ 43, 45, Exs. H, K.; *Acevedo v. Citibank, N.A.*, 209 N.Y.S.3d 753, 785-86 (N.Y. Sup. Ct. 2024), *aff'd*, 240 N.Y.S.3d 389 (N.Y. App. Div. 2025) (holding that "quintessentially broad" agreement, submitting any "dispute relating to . . . this Agreement," including enforceability, to arbitration "clearly and unmistakably" evinced intent to delegate). The 2024 Terms likewise mandate that, "the arbitrator shall have exclusive authority to resolve any Covered Privacy Claim, including, without limitation, disputes regarding the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement." Ex. F; *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 389 (E.D.N.Y. 2025) (finding "clear and unmistakable evidence of parties' intent to delegate" where arbitrator had "exclusive authority" to resolve disputes as to the "interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement.").

Each iteration of the delegation clause is "clear and unmistakable" as to the parties' intent, such that "if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). When presented with such a delegation clause, "a court possesses no power to decide the arbitrability issue." *Id.* at 68.

### C. This Action Must Be Stayed as to Plaintiffs Ramos and Pritchard.

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."

*Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The court should stay the case as to Plaintiffs Ramos and Pritchard.

## CONCLUSION

For the reasons discussed above, Vimeo respectfully requests that the Court compel Ramos and Pritchard's claims to arbitration and stay the case as to them.

Dated: May 14, 2026

RESPECTFULLY SUBMITTED,

By: *\/s/ Matthew Kutcher*

Matthew Kutcher (6275320)
Tiana Demas (6348680)
Jamie Robertson (6345890)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6645
mkutchter@cooley.com
tdemas@cooley.com
jdrobertson@cooley.com

Alexander J. Kasner (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
akasner@cooley.com

*Attorneys for Vimeo.com, Inc.*