**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAVVA DELIYANNIDES, FRED RAMOS, FAITH PRITCHARD, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>VIMEO.COM, INC.,<br><br>Defendant. | Case No. 1:26-cv-01915<br><br>Honorable John Robert Blakey |

**RESPONSE IN OPPOSITION TO DEFENDANT**
**<u>VIMEO.COM, INC.'S MOTION TO COMPEL ARBITRATION</u>**

Plaintiffs Fred Ramos and Faith Pritchard ("Plaintiffs") oppose Defendant Vimeo.com Inc.'s ("Defendant" or "Vimeo") Motion to Compel Arbitration pursuant to 9 U.S.C. §§ 3-4 (the "Motion"). ECF No. 25.

## <u>INTRODUCTION</u>

This action arises from Vimeo's role in facilitating the interception and disclosure of Plaintiffs' personally identifiable information ("PII") in violation of the VPPA, the Federal Wiretap Act, and their right to privacy. Unbeknownst to Plaintiffs, several websites and services they subscribe to in order to watch video content (the "Third-Party Sites") embed Vimeo's back-end streaming technology and platform to deliver that content. Because of how Vimeo's technology is integrated into these third-party websites, Plaintiffs had no way of knowing that Vimeo played any role in the disclosure of their PII.

Separate from the conduct underlying this action, Vimeo also operates Vimeo.com, which hosts its own streaming content and primarily serves to market its streaming platform to website owners and content creators. Vimeo's Motion contends that two of the three Plaintiffs at various

points created a free account directly with Vimeo.com. On that basis, Vimeo seeks to compel those Plaintiffs to arbitration based on these accounts, accounts ***entirely unrelated*** to their interactions on the Third-Party Sites giving rise to the claims in this action. That sheer coincidence should not permit Vimeo to segregate these Plaintiffs from the underlying class and force them into arbitration on a technicality.

Vimeo's Motion fails for several independent reasons. First, Plaintiffs lacked reasonably conspicuous notice of Vimeo's terms of service. One look at the account sign-up screens makes plain why. Moreover, when Pritchard signed up in 2017, the Terms contained ***no*** arbitration clause. Second, even assuming Plaintiffs had notice, the language of the terms of service would, to a reasonable consumer, govern only their use of Vimeo.com, not their interactions with the Third-Party Sites at issue in this underlying action.

## FACTUAL BACKGROUND

Vimeo operates a backend video-content streaming and delivery platform (the "Vimeo OTT Platform"). ECF No. 1 (the "Complaint") ¶ 1. Website owners, including the Third-Party Sites at issue here, install the Vimeo OTT Platform on their websites to upload, host, manage, and stream video content to their subscribers. *Id.* ¶ 60. Vimeo conceals its substantial role in this process by designing the consumer interface so that video content appears to originate from the Third-Party Site rather than from Vimeo. *Id.* ¶ 62.

Plaintiffs Pritchard and Ramos are subscribers to several Third-Party Sites that utilize Vimeo's OTT Platform: Pritchard subscribed to the CorePower Yoga site, and Ramos subscribed to the Criterion Channel and the CorePower Yoga sites. *Id.* ¶¶ 18-19, 30. When Plaintiffs watched video content on those sites, both Plaintiffs had their PII disclosed by to third parties and analytics

providers, including Meta Platforms, Inc. (Facebook) via the Vimeo OTT Platform. *Id.* ¶¶ 22-24, 32-34.[1]

Vimeo also operates its own website at Vimeo.com, which streams its own video content. More importantly, Vimeo.com functions as a marketing platform for the OTT Platform.

According to the Motion, Pritchard signed up for a Vimeo Site account on April 11, 2017. Nezhnik Decl. ¶ 7. The terms of use at that time (the "2017 Terms") contained no arbitration provision. *Id.* ¶ 10.

An arbitration provision first appeared in the Terms in or around December 2019 (the "2019 Terms"). *Id.*

When Vimeo implemented the 2019 Terms on December 12, 2019, it provided a thirty-day notice via a banner at the top of the Vimeo Site's homepage, representing that continued use constituted acceptance of the updated terms. *Id.* ¶ 26.

According to the Motion, Pritchard logged into her Vimeo account ***only*** fifteen times between November 2020 and November 2025. *Id.* ¶ 24. The Motion provides no evidence that Pritchard logged in while the banner was live. Pritchard is far from an avid Vimeo user, averaging only 3 logins per year. *Id.*

The Motion further states that on July 9, 2024, Vimeo sent an email notice to all users, including an email address associated with Pritchard, of the 2024 Terms, stating that continued use of Vimeo's services constituted acceptance of the updated terms. *Id.* ¶ 29.[2]

Vimeo offers no evidence that Pritchard received, saw, or opened that email. The Motion does not identify Pritchard's first login after the July 9, 2024, email update; it states only that she logged in on November 9, 2025, nearly sixteen months after Vimeo sent that email. *Id.* ¶ 24.

---

[1] CorePower Yoga and the Criterion Channel utilize Vimeo's OTT Platform. ¶¶ 1, 73.
[2] The 2017, 2019, 2020, and 2024 terms are collectively referred to as the "Terms."

As to Plaintiff Ramos, Vimeo states he signed up for a Vimeo.com account on December 26, 2020. *Id.* ¶ 36. Vimeo did not present a screenshot of the account screen from December 26, 2020. *Id.* ¶ 37. Vimeo does not contend that the July 9, 2024, email was sent to Ramos.

## LEGAL STANDARD

To compel arbitration, a court must first determine that the parties agreed to arbitrate their disputes. *Harris v. W6LS, Inc.*, 171 F.4th 957, 961 (7th Cir. 2026). Under the Federal Arbitration Act, arbitration must be compelled where three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of that agreement, and (3) a refusal to arbitrate. *Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 630 (N.D. Ill. 2024), *appeal dismissed*, No. 24-1368, 2024 WL 5457089 (7th Cir. Oct. 16, 2024).

The moving party bears the burden of demonstrating that the plaintiff agreed to arbitrate. *Melvin v. Big Data Arts, LLC*, 553 F. Supp. 3d 447, 450 (N.D. Ill. 2021). Courts apply a summary-judgment-like standard: arbitration may be compelled as a matter of law only if "no genuine dispute of material fact exists as to the formation of the agreement." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024).

In determining whether an agreement to arbitrate exists, federal courts apply state-law principles of contract formation. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). Under Illinois law, an enforceable contract requires offer, acceptance, consideration, and mutual assent. *Harris*, 171 F.4th at 963. Until the Court finds an enforceable arbitration agreement exists, that agreement's terms (including any purported delegation provisions) are not binding. *See Walker v. Walgreens Specialty Pharm., LLC,* 2023 WL 5334609, at *10–11 (N.D. Ill. Aug. 18, 2023).

## ARGUMENT

### I. The Court Must Decide Whether an Arbitration Agreement Exists

"One can be required to arbitrate only what one has agreed to arbitrate." *Walker*, 2023 WL 5334609, at *10-11; *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (similar).

Plaintiffs never assented to the Terms, a challenge to the very existence of the contract and therefore a threshold question for the Court, not the arbitrator. *See Vincent v. Nat'l Debt Relief LLC*, 2024 WL 3344227, at *5 (S.D.N.Y. July 8, 2024) ("The FAA is not a substitute for contractual assent."). Unless a valid contract exists, Plaintiffs are bound by neither the arbitration clause nor the choice of law provision contained in those terms. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (refusing to apply a choice of law clause to resolve a contract formation dispute because doing so would "presume the applicability of a provision before its adoption by the parties has been established").

### II. Plaintiffs Are Not Bound By Vimeo's Terms

#### A. Plaintiffs Did Not Have Reasonably Conspicuous Notice Of Vimeo's Terms

Illinois law requires that a website provide reasonable notice that use of the site or a click on a button constitutes assent to an agreement. *See Sgouros*, 817 F.3d1036 ("This is not hard to accomplish"). Courts evaluate notice from the perspective of a "reasonable online shopper — that is, a person who is neither an expert nor a novice with technology." *Johnson v. Hum. Power of N Co.*, 767 F. Supp. 3d 845, 852 (N.D. Ill. 2025) (quoting *Domer v. Menard, Inc.*, 116 F.4th 686, 695 (7th Cir. 2024)). Relevant factors include: (1) the simplicity of the screen; (2) the clarity of the disclosure; (3) the size and coloring of the disclosure's font; (4) the spatial placement of the hyperlink; and (5) the temporal relationship to the user's action. *Id.*; *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 856 (9th Cir. 2022) ("[T]o be conspicuous in this context, a notice

must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it”). No single factor is dispositive, and courts must instead consider how design elements appear on the page. *Johnson*, 767 F. Supp. 3d at 853; *see also Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156-57 (9th Cir. 2025).

Both Plaintiffs attest that they do not recall seeing any hyperlinked Terms during the account sign-up process. *See* Ramos Decl. ¶ 1; Pritchard Decl. ¶ 1. The account screens presented in Vimeo’s Motion explain why:




*Figure 1 - Motion at 3 (2017 Vimeo Sign-up Page — April 11, 2017)*[3]

The hyperlinked Terms appear in small font ***without*** any underscoring to signal that they are a hyperlink, and the blue font blends into the mountain background rather than contrasting with it. *See* Motion at 3; *see also Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885-

---

[3] The December 27, 2020 sign-up page is identical in appearance. *See* Motion at 4.

86 (N.D. Ill. 2020) (terms not conspicuous where font does not contrast with the background); *Berman*, 30 F.4th at 857 (no notice where the font was small and the "other visual elements draw the user's attention away from the barely readable critical text"). There is also ***no*** prompt directing users to the Terms. Motion at 3; *See Sgouros*, 817 F.3d at 1035 ("Where the terms are not displayed but must be brought up by using a hyperlink, courts . . . have looked for a clear prompt directing the user to read them."); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017) (similar). Finally, the Terms are placed at the bottom of the screen, outside the shaded box containing the sign-up fields, a placement that does not support conspicuous notice. Motion at 3; *see also Wilson*, 448 F. Supp. 3d at 883-84 (distance between the relevant button and terms found at the bottom of the screen did not support conspicuous notice). If Vimeo wanted users to take notice of such Terms, this was not the way to do it.

### B. Pritchard Is Not Bound By The 2024 Terms

Pritchard is not bound by any arbitration clause because the 2017 Terms, the terms Vimeo argues were presented to Pritchard, contained ***no*** arbitration provision.

Vimeo advances two theories for why Pritchard is bound by later Terms that do contain an arbitration clause. First, it argues that when it added an arbitration clause on December 12, 2019, it provided a thirty-day notice via a homepage banner stating: "We've updated our Terms of Service and Privacy Policy. By continuing to use our services, you accept these new policies." *See* Motion at 10-11. Second, it argues Pritchard agreed to the 2024 Terms because on July 9, 2024, Vimeo emailed all users, including Pritchard, notifying them that "by continuing to use Vimeo's services, you confirm that you have reviewed and agreed to the updated terms." *Id.* Neither theory holds.

As to the first, the banner does not establish that Pritchard agreed to arbitrate. By Vimeo's own admission, the banner was live for only 30 days. *Id.* Vimeo offers no evidence that Pritchard logged on during that window. Instead, Vimeo states that Pritchard logged into her account "more than a dozen times" between November 2020 and November 2025, after the banner had already come down. *Id*. Pritchard cannot be bound by a banner she did not see. *See Douglas v. U.S. Dist. Court*, 495 F.3d 1062, 1066 (9th Cir. 2007) ("Even if [plaintiff] had visited the website, he would have had no reason to look at the contract posted there. Parties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side."); *see also Berman*, 30 F.4th at 856 (requiring the consumer to "take[ ] some action, such as clicking a button or checking a box" in order to form an enforceable contract under inquiry notice theory).

The second theory fares no better. Pritchard does not recall receiving the July 2024 email. *See* Pritchard Decl. ¶¶ 2-3. Nor has Vimeo offered any evidence that she ever saw or opened it. *See Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) (no assent where the record contained nothing to suggest the defendant "ever tracked whether Plaintiff had opened its email"); *see also Sarchi v. Uber Techs., Inc.*, 2022 ME 8, ¶ 44, 268 A.3d 258, 273 (email containing updated terms was not binding because plaintiff "stated that she was unaware of the email and that she would have had no reason to pay attention to an email from Uber because she was unaware of the original [t]erms"). Even if the email alone could be considered "reasonably conspicuous notice," Pritchard took no action to unambiguously manifest her assent. *See Berman*, 30 F.4th at 856 (a consumer must take some action in order to form an enforceable contract under the inquiry notice theory). In any event, where Vimeo cannot establish that Pritchard had reasonable notice of the 2017 Terms in the first place, an email notice of updated terms is insufficient to establish inquiry notice. *See Wilson*, 448 F. Supp. 3d at 886 (where plaintiff never

previously assented to the defendant's terms of use, plaintiff would not expect to receive an email adding new terms to their dealings).

Vimeo's authority in support of binding Pritchard to the 2024 Terms is neither binding on this Court nor analogous to the facts presented here. *See supra* Section I (explaining why Vimeo's choice-of-law provision does not bind Plaintiffs). For example, in both *Pilon v. Discovery Commc'ns,* 769 F. Supp. 3d 280, 289 (S.D.N.Y. 2025) and *Pincaro v. Glassdoor, Inc*., No. 16 Civ. 6870 (ER), 2017 U.S. Dist. LEXIS 147517, at *3 (S.D.N.Y. Sept. 12, 2017), the plaintiffs ***did not*** dispute receiving notice of the updated terms. Moreover, in *Pilon*, the plaintiff, a paying monthly subscriber, took an affirmative action evidencing his notice of the updated terms. 769 F. Supp. 3d at 289 (after receiving notice of the updated terms and returning to the website, plaintiff was required to close a pop-up, press an "X" button in the notification, continue his subscription, and then stream an episode). Defendant's remaining authority is likewise distinguishable. *See Valle v. ATM Nat'l, LLC*, 2015 WL 413449, at *5 (S.D.N.Y. Jan. 30, 2015) (assent to an email containing updated terms of service was established through a declaration outlining defendant's mailing procedures and where physical mail was sent as part of regular correspondence and not as an "unexpected email" ); *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026) (one plaintiff ***downloaded defendant's app*** after receiving notice of the updated terms, while another plaintiff periodically used the app ***shortly after*** receiving notice of the updated terms).

Again, Pritchard disputes receiving notice of the 2024 Terms. *See* Pritchard Decl. ¶¶ 2-3. And a login, to a free account, occurring sixteen months after the allegedly sent email is insufficient to establish inquiry notice. *See Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1085-86 (9th Cir. 2020) (holding that a single website visit four years after agreeing to a contract with a change-of-terms provision was insufficient to bind the user to the then-current updated terms of which she

had no notice). Accordingly, if Pritchard is bound by any Terms at all (which she is not), it would be the 2017 Terms, which contained no arbitration provision.

### C. Plaintiffs Did Not Assent To Arbitrate Their Claims With Vimeo Arising From Their Use Of A Different Website

No enforceable contract can be formed where the parties do not share a common understanding of the essential terms. *Wilson*, 448 F. Supp. 3d at 881; *see also Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016).

Here, even if Plaintiffs had reasonably conspicuous notice of the Terms, they did not assent to be bound by an arbitration provision so expansive that it would bar them from asserting claims emanating from their use of a Third-Party Site. For example, according to the Motion, the 2020 Terms in effect when Ramos created his account read:

> This Vimeo Terms of Service Agreement (the "Agreement" or "Terms of Service") is made between Vimeo, Inc. ("Vimeo," "we," "us," or "our") and you, our customer ("you" or "your"). This Agreement governs your use of Vimeo-owned and operated websites, applications, and embeddable video players (collectively, the "Services"). This includes our Vimeo, Vimeo OTT, and Livestream services.

Nezhnik Decl. Ex. H

Here, a reasonable person would understand the 2020 Terms to govern only "***Vimeo owned***-and-operated websites" such as Vimeo.com, not their use of an independently owned Third-Party Site like the Criterion Channel or CorePower Yoga that happened to integrate Vimeo's OTT Platform. And this makes sense: Ramos would have no way of knowing whether the Criterion or CorePower Yoga websites were leveraging Vimeo's streaming technology, as it is specifically designed to integrate invisibly into a Third-Party Site's back-end architecture. *See* ¶¶ 62-69; Ramos Decl. ¶ 4. Vimeo provides no evidence to the contrary. The same logic applies to Pritchard. Because the 2017 Terms applicable to her account contained no arbitration provision, the only

arbitration provision that ***could*** be imputed to her would come from the 2024 Terms, which are nearly identical in scope to the 2020 Terms and suffer from the same deficiencies.[4]

Moreover, the phrase "governs your use," as applied to "applications" and "embeddable video players," including "Vimeo OTT" services, in both the 2020 and 2024 Terms, would more naturally describe someone seeking to embed a Vimeo player on their own website, not someone merely watching video content on a Third-Party Site. This reading is consistent with Vimeo's business model: while Vimeo.com hosts some streaming content, its primary purpose is marketing its OTT Platform to website owners and content creators, including the very Third-Party Sites at issue in this action. For example, the Terms are rife with language specific to how a website owner would use the OTT Platform. *See, e.g.* 2020 Terms, 2024 Terms ("***Upload, store, and/or live stream videos****,* subject to your plan") (emphasis added); ("***Embed our embeddable video player on third-party websites***") (emphasis added); ("***Use all related functionality*** that we may provide") (emphasis added); ("You may create an account to use certain features we offer (***e.g., uploading*** or live streaming videos)") (emphasis added); ("We offer free memberships and paid subscriptions that allow you to ***upload and share video content***.") (emphasis added); ("Free members ***may not submit videos*** that they did not create or play a material part in creating.") (emphasis added).

Indeed, a subscriber to the CorePower Yoga or Criterion Channel website would have no reason to think they could "upload," "live stream," or "submit" video content to such websites. This is particularly apparent with the Criterion Channel, which exists solely to stream classic films to its subscribers. Courts do not enforce this kind of "gotcha" application of assent. *See Wexler*,

---

[4] "This Vimeo Terms of Service Agreement (the "Agreement" or "Terms of Service") is made between Vimeo.com, Inc. ("Vimeo," "we," "us," or "our") and you, our customer ("you" or "your"). This Agreement governs your use of Vimeo-owned and operated websites, applications, and embeddable video players (collectively, the "Services"). This includes our Vimeo, Vimeo OTT, and Livestream services, but not our Magisto, Wibbitz, or WIREWAX services which are governed by separate online agreements." Nezhnik Decl. Ex. F.

211 F. Supp. 3d at 504 (denying arbitration because no reasonable person would think that accepting terms for cell phone service would obligate them to arbitrate every dispute with the provider's affiliates regarding unrelated services); *see also Revitch v. DIRECTV, LLC*, 977 F.3d 713, 718 (9th Cir. 2020) (refusing to bind a consumer to an arbitration clause covering an entity that became a corporate affiliate only years after contracting, because the consumer "could not reasonably have expected" at the time of contracting to be bound as to that later-affiliated party); *Xin Tao v. Murphy*, 812 F. Supp. 3d 1117, 1125 (D. Nev. 2025) (denying arbitration because plaintiff could not have anticipated that creating an Airbnb account would bind him to arbitration for a claim arising from unrelated conduct); *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 119-20 (2d Cir. 2025) (denying arbitration where antitrust claims concerning pricing on competing food-delivery platforms, not the Grubhub platform itself, lacked the necessary nexus to Grubhub's "use of the Platform"). Therefore, Plaintiffs should be allowed to maintain their action against Vimeo arising from Vimeo's conduct on the Third-Party Sites.

## CONCLUSION

For the foregoing reasons, Vimeo's Motion should be denied. In the alternative, Plaintiffs request limited discovery pertaining to the arbitrability of their claims.

Dated: June 15, 2026

**LEVI & KORSINSKY, LLP**

By: */s/ Tyler A. Litke*
Tyler A. Litke
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: tlitke@zlk.com

Patrick O. Muench
**BAILEY & GLASSER LLP**
318 W. Adams Street, Suite 1512
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
Email: pmuench@baileyglasser.com.

Mark S. Reich**
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com

John Roddy*
**BAILEY & GLASSER LLP**
101 Arch Street, 8th Floor
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954
Email: jroddy@baileyglasser.com

Michael L. Murphy*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson St. Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
Email: mmurphy@baileyglasser.com

*admitted *pro hac vice*

***pro hac vice* forthcoming

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2026, I electronically filed the foregoing RESPONSE IN OPPOSITION TO DEFENDANT VIMEO.COM, INC.'S MOTION TO COMPEL ARBITRATION using this Court's EM/ECF service, which will provide copies to all parties/counsel of record registered to receive CM/ECF notification.

*/s/ Tyler A. Litke*