**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAVVA DELIYANNIDES, FRED RAMOS, FAITH PRITCHARD, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIMEO.COM, INC.<br><br>Defendant. | No. 1:26-cv-1915 |

**Plaintiffs' Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)**


Mark S. Reich**
LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, NY 10004
T: 212.363.7500
F: 212.363.7171
mreich@zlk.com

Patrick O. Muench
BAILEY & GLASSER LLP
318 W. Adams Street, Suite 1512
Chicago, IL 60606
T: 312.500.8680
F: 304.342.1110
pmuench@baileyglasser.com

John Roddy*
BAILEY & GLASSER LLP
101 Arch Street, 8th Floor
Boston, MA 02110
T: 617.439.6730
F: 617.951.3954
jroddy@baileyglasser.com

Michael L. Murphy*
BAILEY & GLASSER LLP
1055 Thomas Jefferson St. Suite 540
Washington, DC 20007
T: 202.463.2101
F: 202.463.2103
Email: mmurphy@baileyglasser.com

* admitted *pro hac vice*
** *pro hac vice* motion forthcoming

# Table of Contents


Table of Authorities ..... iii

Cases ..... iii

Federal Statutes ..... vi

State Statutes ..... vi

Rules ..... vi

Other Materials ..... vi

Background ..... 1

Applicable Legal Standards ..... 1

A. Personal Jurisdiction under Rule 12(b)(2) ..... 1

B. Stating a claim under Rule 12(b)(6) ..... 1

Argument ..... 2

A. Defendant is subject to the specific jurisdiction of this Court ..... 2

1. Defendant purposefully directed its activities at Illinois ..... 2

2. Plaintiffs' injuries arose from Defendant's Illinois-related activities ..... 8

3. The exercise of jurisdiction over defendant comports with traditional notions of fair play and substantial justice ..... 9

B. Plaintiffs' complaint states a plausible claim under the VPPA ..... 10

1. This Court should reject Defendant's invitation to graft the Second Circuit's atextual "ordinary person" standard on to the VPPA in this matter ..... 11

a. The information Defendant collects through the OTT Platform qualifies as PII under the terms of the VPPA ..... 11

b. *Solomon*'s "ordinary person" test is not supported by the text of the VPPA as enacted by Congress ..... 12

2. Plaintiffs allege that Vimeo knowingly disclosed PII to third parties in violation of the VPPA ..... 13

3. Plaintiffs used Defendant's OTT Platform to subscribe to the "goods or services" at issue here ..... 14

C. Plaintiffs' allegations adequately and plausibly state a claim for invasion of privacy ..... 14

D. Plaintiffs' allegations adequately and plausibly state a claim under the Federal Wiretap Act ..... 17

E. Plaintiff Pritchard's claims are not time-barred ..... 18

F. Plaintiffs have class standing ..... 20

# Table of Authorities

***Cases***


*A.J.T. v. Osseo Area Schs., Ind. Sch. Dist. No. 279*,
605 U.S. 335 (2025)....................12, 13

*Ames v. Ohio Dep't of Youth Servs.*,
605 U.S. 303 (2025)....................12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................1

*Austin-Spearman v. AMC Network Entm't LLC*,
98 F.Supp.3d 662 (S.D.N.Y. 2015)....................15 n.16

*Banks v. CoStar Realty Info., Inc.*,
2025 WL 2959228 (E.D. Mo. Oct. 20, 2025)....................11 n.10

*Batton v. Compass, Inc.*,
2026 WL 810976 (N.D. Ill. Mar. 24, 2026)....................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................1

*Bloyer v. St. Clair Cnty. Ill.*,
2016 WL 739033 (S.D. Ill. Feb. 25, 2016)....................18, 19

*Cantu v. Tapestry, Inc.*,
2023 WL 4440662 (S.D. Cal. July 10, 2023)....................15 n.17

*Cater v. MyHeritage (USA) Inc.*,
2026 WL 851264 (N.D. Ill. Mar. 27, 2026)....................7, 8, 9

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
605 U.S. 223 (2025)....................12

*Chandra v. Prager Univ. Found.*,
2026 U.S. Dist. LEXIS 33002, at *9-10 (C.D. Cal. Jan. 27, 2026)....................13 n.13

*Corley v. Rosewood Care Ctr., Inc.*,
142 F.3d 1041 (7th Cir. 1998)....................19 n.19

*Dawson v. Univ. of Phoenix*,
2026 WL 92248 (N.D. Ill. Jan. 13, 2026)....................11, 18

*Dzananovic v. Bumble, Inc.*,
2023 WL 4405833 (N.D. Ill. July 7, 2023) ........ 3, 4, 7 n.7, 9, 10

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 14 n.13, 15,

*Feldman v. Star Trib. Media Co.*,
659 F.Supp.3d 1006 (D. Minn. 2023) ........ 15, 15 n.15

*Gaul v. SignalHire LLC*,
2024 WL 3652876 (C.D. Ill. Aug. 5, 2024) ........ 4, 6

*Ghanaat v. Numerade Labs, Inc.*,
689 F.Supp.3d 714 (N.D. Cal. 2023) ........ 11

*Goodman v. Hillsdale Coll.*,
2025 WL 2941542 (W.D. Mich. Oct. 17, 2025) ........ 11 n.10

*Gutierrez v. Wemagine.AI LLP*,
2022 WL 252704 (N.D. Ill. Jan. 26, 2022) ........ 7 n.8

*Haines v. Cengage Learning, Inc.*,
2025 WL 2336089 (S.D. Ohio May 5, 2025) ........ 12 n.11

*Hannant Memorial Hosp.*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ........ 16

*Hemi Grp.*,
622 F.3d 754, 760 (7th Cir. 2010) ........ 6, 7 n.7, 10

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 13 n.13, 14

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) ........ 12 n.11

*JT's Frames, Inc. v. Casares*,
2018 WL 835225 (N.D. Ill. Feb. 13, 2018) ........ 1, 2

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ........ 5

*Kukovec v. Estée Lauder Cos., Inc.*,
2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) ........ 9

*Lisota v. Heartland Dental, LLC*,
2026 WL 91667 (N.D. Ill. Jan. 13, 2026) ....................17, 18

*Lukis v. Whitepages Inc.*,
454 F.Supp.3d 746 (N.D. Ill. Apr. 16, 2020)....................2

*Manza v. Pesi, Inc.*,
2025 WL 1445762 (W.D. Wis. May 20, 2025) .................... 11, 11 n.10, 12 n.11, 12 n.12

*Mayhew v. Candid Color Sys., Inc.*,
743 F.Supp.3d 994 (N.D. Ill. Aug. 5, 2024)....................3, 8

*Moomaw v. GeoSnapShot PTY LTD*,
2024 WL 991531 (S.D. Ill. Mar. 7, 2024)....................9, 10

*NBA Props., Inc. v. HANWJH*,
46 F.4th 614 (7th Cir. 2022)....................3

*NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A,"*
549 F.Supp.3d 790 (N.D. Ill. 2021) ....................7 n.7

*Pileggi v. Washington Newspaper Publ'g Co., LLC*,
146 F.4th 1219 (D.C. Cir. 2025) ....................15, 16

*Podraza v. Nourish, Inc.*,
2026 WL 1078554 (N.D. Ill. Apr. 20, 2026)....................6 n.4

*Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*,
2017 WL 3386116 (N.D. Ill. Aug. 7, 2017)....................3

*Saunders v. Hearst Television, Inc.*,
711 F.Supp.3d 24 (D. Mass. 2024)....................15 n.15

*Sidney Hillman Health Ctr. of Rochester v. Abbot Laboratories, Inc.*,
782 F.3d 922 (7th Cir. 2015)....................19

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025).................... *passim*

*Stussy, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*,
2026 WL 1536818 (N.D. Ill. June 1, 2026) ....................6

*United States v. Melvin*,
948 F.3d 848 (7th Cir. 2020)....................10 n.9

*Vega v. Chicago Park Dist.*,
958 F.Supp.2d 943 (N.D. Ill. 2013) ....................................................................15, 16

*Welbel v. Shout! Factory, LLC*,
2026 WL 266561 (N.D. Ill. Feb. 2, 2026)..............................................................11, 12

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ..........................................................17

**Federal Statutes**

18 U.S.C. § 2710..........................................................................................................14

18 U.S.C. § 2710(a)(1)..................................................................................................10

18 U.S.C. § 2710(a)(4)..................................................................................................10

18 U.S.C. § 2710(b)(1) .................................................................................................10

18 U.SC. § 2710(b)(2)(B) .............................................................................................16

**State Statutes**

Illinois Biometric Information Act ("BIPA")........................................................... 4-8

**Rules**

Fed. R. Civ. P. 12(b)(2) ...................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1

**Other Materials**

Artificial Intelligence Addendum, Vimeo, https://vimeo.com/legal/service-terms/ai (last updated Mar. 3, 2026) ......................................................................... 8-9

*Analytics: feature access by account type*, vimeo Help Center, https://help.vimeo.com/hc/en-us/articles/12426192701841-Analytics-feature-access-by-account-type ...........................................................................................5 n.2

*Black's Law Dictionary* (5th ed. 1979) ..................................................................10 n.8

*How to set regional availability for my videos*, vimeo Help Center, https://help.vimeo.com/hc/en-us/articles/34409598474897-How-to-set-regional-availability-for-my-videos .................................................................................5 n.3

S. Rep. No. 100-599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1 ....................................15

Second Restatement § 652B ....................................................................................................15

*Troubleshooting: Some Vimeo AI features are unavailable in my location*, Vimeo Help Center, https://help.vimeo.com/hc/en-us/articles/25550988327185-Troubleshooting-Some-Vimeo-AI-features-are-unavailable-in-my-location ............................6 n.5

Nilay Patel, *Vimeo CEO Philip Moyer is betting on the human touch – and AI*, The Verge, Feb. 24, 2025, https://www.theverge.com/decoder-podcast-with-nilay-patel/616820/philip-moyer-interview-vimeo-ai-google-youtube-creators ...............................6 n.6

Plaintiffs Savva Deliyannides, Fred Ramos, and Faith Pritchard, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, respectfully submit this opposition to Defendant's motion to dismiss under Rules 12(b)(2) and (b)(6).

## Background

Plaintiffs brought this putative class action on February 20, 2026. Dkt. No. 1. The three-count complaint brings claims under the Video Privacy Protection Act, common law invasion of privacy (*i.e.*, intrusion upon seclusion), and the Federal Wiretap Act. In brief, this matter relates to Vimeo's improper acquisition and use of Plaintiffs' personally-identifying information ("PII") and otherwise intercepting their sensitive information in violation of the laws referenced above.

## Applicable Legal Standards

### A. Personal jurisdiction under Rule 12(b)(2)

Courts can exercise specific personal jurisdiction over Defendant "if authorized by both the United States Constitution and Illinois law." *JT's Frames, Inc. v. Casares*, 2018 WL 835225, at *3 (N.D. Ill. Feb. 13, 2018). "As a general matter, the Court accepts as true the factual allegations relevant to jurisdiction made in the plaintiff['s] complaint, and draws all reasonable inferences in [their] favor." *Id.* Without the benefit of an evidentiary hearing at the pleadings stage, plaintiffs only bear the burden of making a prima facie case for personal jurisdiction. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392-93 (7th Cir. 2020).

### B. Stating a claim under Rule 12(b)(6)

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

## Argument

### A. Defendant is subject to the specific jurisdiction of this Court.

"Personal jurisdiction can be either general or specific." *JT's Frames, Inc. v. Casares*, 2018 WL 835225, at *4 (N.D. Ill. Feb. 13, 2018) (quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010)).

"The Illinois long-arm statute 'permits its courts to exercise personal jurisdiction on any basis permitted by the constitutions of both Illinois and the United States.'" *JT's Frames*, 2018 WL 835225, at *3 (citation omitted). This test "authorizes a court to exercise jurisdiction over a non-resident" where "the defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *Id.* at *4 (citation omitted). "The 'three essential requirements' for establishing specific jurisdiction are: '(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.'" *Lukis v. Whitepages Inc.*, 454 F.Supp.3d 746, 757 (N.D. Ill. Apr. 16, 2020) (citation omitted). Plaintiffs' Complaint establishes all three elements.

#### 1. Defendant purposefully directed its activities at Illinois

*First*, Defendant purposefully directed its activities at Illinois and has sufficient minimum contacts with Illinois to subject it to personal jurisdiction in this Court.

In the Seventh Circuit, "physical presence is not necessary for a defendant to have sufficient minimum contacts." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) (citation omitted). "That said, a defendant's mere operation or ownership of an interactive website that is just accessible in the forum state should not subject the defendant to jurisdiction, without the defendant targeting the forum state." *Dzananovic v. Bumble, Inc.*, 2023 WL 4405833, at *3 (N.D. Ill. July 7, 2023). "Yet '[a] defendant's deliberate and continuous exploitation of the market in a forum state, accomplished through its website as well as through other contacts with the state, can be sufficient to establish specific personal jurisdiction.'" *Id.* (citation omitted); *see also Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, 2017 WL 3386116, at *5 (N.D. Ill. Aug. 7, 2017).

While "courts have concluded that there can be no specific personal jurisdiction over a defendant-vendor who simply provides technology to corporate customers from outside of Illinois with little to no knowledge of how that technology arrived in Illinois or was used by its residents … [,] if the defendant-vendor has its own direct contacts with the forum state, and they are not merely enabled or created by a third party, …. those contacts may support an exercise of specific personal jurisdiction." *Mayhew v. Candid Color Sys., Inc.*, 743 F.Supp.3d 994, 1004 (N.D. Ill. Aug. 5, 2024).; *see also Batton v. Compass, Inc.*, 2026 WL 810976, at *8 (N.D. Ill. Mar. 24, 2026) (plaintiff can establish personal jurisdiction where, "[f]or example, a defendant …. cause[s] its product or service to be distributed or carried out in the forum state").

Here, Defendant operates the OTT Platform, which is used by the OTT websites and is used by consumers in Illinois. *See, e.g.*, ¶¶ 1-2, 41-42, 60-69[1]; Def. Mem. in Supp. of Mot. to Dismiss ("Mem."), at 4. Dkt. No. 27-1. Through this OTT Platform, Defendant "enables clients

[1] Citations to "¶" refer to the Complaint, Dkt. No. 1.

to deliver video content …, with [Defendant] responsible for the underlying website infrastructure, video delivery, and data tracking mechanisms." ¶ 39; *see also id.* ¶ 67. Defendant attests that its OTT Platform is "geographically neutral," but that fact alone does not control. *Dzananovic*, 2023 WL 4405833, at *6; *see* Nezhnik Decl., ¶¶ 6, 8 (Dkt. No. 27-2). Plaintiffs allege Defendant intentionally targeted Illinois via its OTT Platform, including by loading tracking tools onto Illinois consumers' browsers to track, collect, and transmit their data and by specifically tailoring the OTT Platform for use in Illinois. *See* ¶ 41 (discussing BIPA).

To start, "the tracking tools were loaded onto several of the Plaintiffs' devices in this District and caused the interception and transmission of several of the Plaintiffs' Sensitive Information in this District." ¶ 42.[2] These tracking tools continued to act without the users' knowledge to track and transmit data after being downloaded. *See, e.g.*, *id.* ¶¶ 71-81, 85-121. The deployment of such technology is relevant for a personal jurisdiction analysis and can, in context, support a finding of personal jurisdiction. *See, e.g.*, *Gaul v. SignalHire LLC*, 2024 WL 3652876, at *5 (C.D. Ill. Aug. 5, 2024) (finding personal jurisdiction over defendant who "chose … to compile information on Illinoisans and use their Illinois residency" in furthering its business).

Defendant's argument to the contrary depends on recharacterizing every Illinois contact as the independent act of the OTT Website operators rather than Defendant. This reframing contradicts Plaintiffs' allegations. Defendant does not merely license inert software; instead, it generates, hosts, and delivers the operative code to users of the OTT Websites ("Subscribers"). Moreover, Defendant's own infrastructure performs the video delivery and data-tracking functions at issue. ¶¶ 39, 67. When an Illinois Subscriber loaded an OTT Website, it was

---

[2] The Complaint defines "Sensitive Information" as including consumers' "identity, video viewing history, viewing times, and search activity." ¶ 3.

Defendant's code—generated, hosted, and transmitted by Defendant—that reached that Subscriber's device in Illinois and caused the interception and transmission of the Subscriber's Sensitive Information. ¶¶ 42, 71-81, 85-121. In other words, the relevant conduct (deploying tracking technology onto Illinois devices, which routed Illinois users' data back out) was performed by Defendant's own systems which reached *into Illinois*.

In addition, Defendant specifically tailors the OTT Platform for use in Illinois, as evidenced by its acknowledgment that AI elements of its Platform are not available for users in Illinois to comply with the Illinois Biometric Information Act ("BIPA"). *See* ¶ 41. Indeed, Defendant provides granular controls over who can access videos, and by default, chooses to enable videos nationwide and allow video owners to exclude regions, rather than the other way around.[3] On the other hand, Vimeo purposefully excludes Illinois users from accessing certain AI features so that it can access the Illinois market without violating BIPA.

Defendant claims its advertised tailoring to Illinois and compliance with BIPA is "irrelevant" to the question of personal jurisdiction because its "biometric compliance extends to multiple states." Mem. at 6. This argument fails for two reasons. *First*, the fact that Defendant tailors its platform for more than one jurisdiction does not divest this Court of personal jurisdiction. Personal jurisdiction may exist in many jurisdictions where the elements for specific jurisdiction are met in each place. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780-81

---

[3] *See, e.g.*, *Analytics: feature access by account type*, Vimeo Help Center, https://help.vimeo.com/hc/en-us/articles/12426192701841-Analytics-feature-access-by-account-type (last visited June 15, 2026) (advertising its ability to provide "state and city-level analytics"); *How to set regional availability for my videos*, Vimeo Help Center, https://help.vimeo.com/hc/en-us/articles/34409598474897-How-to-set-regional-availability-for-my-videos (last visited June 15, 2026) (explaining how to "set regional availability by using zip codes" within the United States).

(1984).[4] Put another way, Defendant cannot "have its cake and eat it, too" by seeking "the benefit of a nationwide business model with none of the exposure." *Stussy, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2026 WL 1536818, at *3 (N.D. Ill. June 1, 2026) (quoting *Illinois v. Hemi Grp.*, 622 F.3d 754, 760 (7th Cir. 2010)).

*Second*, the facts indicate that Defendant *does* tailor its platform more specifically for Illinois than it does for all states nationwide. For example, its "Help Center" page on its website notes that "[s]ome of our AI features are not available to users residing in the state of Illinois."[5] In other words, Defendant publicly indicates to its customers that (1) it identifies the residence of its users (so as to identify which of them live in Illinois), and (2) it modifies its platform to remove features that do not comply with Illinois law for those users, and those users alone. This is different than merely stating compliance with a specific state law (which may not involve identifying users in a particular state or modifying the platform for those users specifically). Similarly, Defendant's CEO publicly confirmed that the company modifies its available AI features "in certain states inside of the United States, like Illinois or Texas," to accord with specific state laws regarding biometric privacy.[6] In brief, "[b]ecause [Defendant] appears to have 'taken steps to reach consumers in Illinois,' it has created a relationship with the forum state that has 'special relevance' to the litigation." *Gaul*, 2024 WL 3652876, at *5 (citation omitted).

---

[4] *Podraza v. Nourish, Inc.*, 2026 WL 1078554, at *3 n.6 (N.D. Ill. Apr. 20, 2026); *Fry v. Ancestry.com Operations Inc.*, 2023 WL 2631387, at *2 (N.D. Ind. Mar. 24, 2023); *Greene v. Karpeles*, 2019 WL 1125796, at *6 (N.D. Ill. Mar. 12, 2019).

[5] *Troubleshooting: Some Vimeo AI features are unavailable in my location*, vimeo Help Center, https://help.vimeo.com/hc/en-us/articles/25550988327185-Troubleshooting-Some-Vimeo-AI-features-are-unavailable-in-my-location (last visited June 15, 2026).

[6] Nilay Patel, *Vimeo CEO Philip Moyer is betting on the human touch – and AI*, The Verge, Feb. 24, 2025, https://www.theverge.com/decoder-podcast-with-nilay-patel/616820/philip-moyer-interview-vimeo-ai-google-youtube-creators (last visited June 15, 2026).

Indeed, Judge Joan H. Lefkow recently rejected this position regarding another defendant's modification of its online features available in Illinois to comply with BIPA:

> [The defendant] chose to continue to do business in Illinois, but intentionally made a biometrics-using feature unavailable in Illinois, presumably to protect itself from liability under an Illinois-specific biometrics law. This demonstrates that [the defendant] reasonably foresaw being subjected to personal jurisdiction in Illinois related to offering its products to Illinois residents. [The defendant] cannot claim unfair surprise over the exercise of personal jurisdiction in Illinois.

*Cater v. MyHeritage (USA) Inc.*, 2026 WL 851264, at *6 (N.D. Ill. Mar. 27, 2026). Vimeo has sufficient minimum contacts with Illinois for this Court to exercise personal jurisdiction.[7]

*Castelaz v. Estée Lauder Cos., Inc.*, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024), is not to the contrary. To begin, defendant there provided a sworn declaration from its Chief Strategies Officer stating, *inter alia*, that it did not "direct any advertising or marketing to Illinois" and that it "never solicited business, had sales, or had meetings or discussions with [its co-defendant] in Illinois, and it has not targeted any commercial activity in Illinois." *Id.* at *4. Defendant has provided no such complete disavowal of business in Illinois. In any event, the *Castelaz* court's analysis turned on the fact that the relevant platform "operate[d] the same for any user …, regardless of the state in which the user is located."[8] *Id.* at *5. Not so here, where Defendant identifies which users are located in Illinois and modifies the features available to those users. Indeed, unlike in *Castelaz*, Plaintiffs here rely on more than some passing "refer[ence] to BIPA" in Defendant's privacy policy and terms of service; instead, they rely on Defendant's admitted

---

[7] *See also, e.g.*, *Fairly Odd Treasures, LLC v. P'ship & Unincorporated Ass'ns Identified in Schedule "A,"* 2024 WL 1639815, at *3 (N.D. Ill. Apr. 16, 2024); *Dzananovic*, 2023 WL 4405833, at *3; *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A,"* 549 F.Supp.3d 790, 794 (N.D. Ill. 2021) (quoting *Hemi Grp.*, 622 F.3d at 758).

[8] Similarly, in *Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704, *2 (N.D. Ill. Jan. 26, 2022), and *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, *2 (N.D. Ill. Jan. 21, 2016), the dispositive fact in both cases was uniformity: technology applied the same way nationwide, with nothing singling out Illinois.

shaping of its technology to specifically target users in Illinois. Personal jurisdiction is therefore appropriate. *See Cater*, 2026 WL 851264, at *6.

*Third*, Defendant leans on the principle that there is no specific jurisdiction over "a defendant-vendor who simply provides technology to corporate customers from outside of Illinois with little to no knowledge of how that technology arrived in Illinois or was used by its residents." *Mayhew*, 743 F.Supp.3d at 1004. This argument fails for the same reason as Defendant's BIPA-based argument: where "the defendant-vendor has its own direct contacts with the forum state, and they are not merely enabled or created by a third party, … those contacts may support an exercise of specific personal jurisdiction." *Id.* (citation omitted). Defendant has its own direct contacts with Illinois: it generates, hosts, and delivers the operative code into Illinois devices, ¶¶ 39, 67, and it affirmatively identifies and accommodates its Illinois users. Those contacts are Defendant's own, not contacts "merely enabled or created by a third party." *Mayhew*, 743 F. Supp. 3d at 1004. Defendant therefore falls within the exception, not the rule, it invokes, and personal jurisdiction is appropriate.

**2. Plaintiffs' injuries arose from Defendant's Illinois-related activities.**

In addition, Plaintiffs' injuries arose from Defendant's Illinois-Related Activities: Plaintiffs used the OTT Platform, which Defendant modified for use in Illinois.

Defendant asserts, without evidentiary support, that its "purported 'biometric' compliance relates to separate features on Vimeo.com, not the OTT Websites or the claims asserted here." Mem. at 7. But this assertion does not line up with the contractual terms for the OTT Platform. The Terms of Service—which explicitly apply to users of the OTT Platform (*see* Terms (Mem. Ex. A) at 1)—incorporate the Vimeo Artificial Intelligence Addendum (*id.* § 2). The Artificial Intelligence Addendum, in turn, provides that "You may not use Vimeo AI to create a synthetic replica of any individual's voice if you or the individual whose voice is used to create the replica

reside in a jurisdiction where applicable law requires Vimeo to obtain that individual's express consent before collecting or using biometric identifiers, including voiceprints." Artificial Intelligence Addendum, Vimeo, https://vimeo.com/legal/service-terms/ai (last updated Mar. 3, 2026). The word "jurisdiction" is a hyperlink that leads to the help article discussed *supra* at 6, which provides that "Some of our AI features are not available to users residing in the state of Illinois." In other words, Defendant binds users of the OTT Platform to comply with Illinois law when using AI features on the Platform, a clear indication that it anticipates that users of the OTT Platform will encounter and use those features. At most, Defendant's unsupported claim to the contrary creates a factual issue relating to personal jurisdiction best resolved at a later stage of the litigation (or upon the taking of limited jurisdictional discovery).

Here, Plaintiffs' claims arise from the illegal interception and transmission of their Sensitive Information via the tracking tools placed on Plaintiffs' devices via the OTT Platform, which is available in Illinois because of Vimeo's express efforts to comply with Illinois law and allow its customers to use the OTT Platform in Illinois without exposing Defendant to liability under Illinois law. This is sufficient for the purposes of personal jurisdiction. *See Dzananovic*, 2023 WL 4405833, at *5 (finding "a strict causal connection between the defendant's in-state activity and the plaintiff's suit is not required") (citation omitted); *see also Cater*, 2026 WL 851264, at *5; *Moomaw v. GeoSnapShot PTY LTD*, 2024 WL 991531, at *10 (S.D. Ill. Mar. 7, 2024); *Kukovec v. Estée Lauder Cos., Inc.*, 2022 WL 16744196, at *1 (N.D. Ill. Nov. 7, 2022).

**3. The exercise of jurisdiction over defendant comports with traditional notions of fair play and substantial justice**

In determining whether the "exercise of jurisdiction 'offend[s] traditional notions of fair play and substantial justice,'" courts consider: (1) "[t]he burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining

convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute," (5) and "the shared interest of the several States in furthering fundamental substantive social policies." *Curry*, 949 F.3d at 400 (citations omitted). Where "the plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (citation omitted).

Here, Defendant does not raise any unusual burden in defending suit in Illinois other than its out-of-state residency and has extensive resources to defend itself, which "militates against a finding of unfairness. … Further, Illinois has an interest in providing a forum for its residents …. to seek redress …." *See Dzananovic*, 2023 WL 4405833, at *7; *see also Hemi Grp.*, 622 F.3d at 760; *Moomaw*, 2024 WL 991531, at *10 (citation omitted). Accordingly, Defendant is subject to personal jurisdiction in this Court.

**B. Plaintiffs' complaint states a plausible claim under the VPPA.**

The VPPA prohibits any "video tape service provider" from "knowingly disclos[ing] … personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).[9] The statute defines "video tape service provider" as "any person, engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id*. § 2710(a)(4). It defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id*. § 2710(a)(1).

[9] Disclosure is not defined under the VPPA, but the Seventh Circuit has held that the plain meaning of "disclose" for statutes drafted in the 1980s was to "bring into view by uncovering; to expose; to make known; to lay bare; to reveal to knowledge; to free from secrecy or ignorance, or make known." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (quoting *Black's Law Dictionary* (5th ed. 1979)).

**1. This Court should reject Defendant's invitation to graft the Second Circuit's atextual "ordinary person" standard on to the VPPA in this matter.**

**a. The information Defendant collects through the OTT Platform qualifies as PII under the terms of the VPPA.**

The Second Circuit's atextual "ordinary person" standard introduced in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), has been rejected by courts in this district where actual knowledge has been alleged (as opposed to mere constructive knowledge). *See, e.g.*, *Welbel v. Shout! Factory, LLC*, 2026 WL 266561 at*4 (N.D. Ill. Feb. 2, 2026); *Dawson v. Univ. of Phoenix*, 2026 WL 92248 at *7-8 (N.D. Ill. Jan. 13, 2026); *Manza v. Pesi, Inc.*, 784 F.Supp.3d 1110, 1123 (W.D. Wis. May 20, 2025).[10] Defendant's heavy reliance on the Second Circuit's standard here is misplaced. Mem. at 12.

In *Solomon*, the Second Circuit read in an "ordinary person" standard that is not rooted in or related to the text of the VPPA. The *Solomon* court created an exception to the VPPA by determining PII "encompasses information that would allow an ordinary person to identify a consumer's video-watching habits, but not information that only a sophisticated technology company could use to do so." *Solomon*, 136 F.4th at 52. In *Manza*, which expressly rejects *Solomon*, the court observed that "[r]ather than rely on the text, the courts adopting an 'ordinary person' test have concluded that the meaning of PII is ambiguous in the VPPA, and they rely on other tools of statutory construction to support a narrower reading. But the reasons they provide are not persuasive." 784 F. Supp. 3d at 1119. This view of PII supports "[m]ost, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("This Court agrees that a FID can constitute PII where it leads to a Facebook page that discloses personal and identifying

[10] *See also Goodman v. Hillsdale Coll.*, 2025 WL 2941542, at *8 (W.D. Mich. Oct. 17, 2025); *Banks v. CoStar Realty Info., Inc.*, 2025 WL 2959228, at *6 (E.D. Mo. Oct. 20, 2025).

information ….")[11] Here, Plaintiffs have sufficiently alleged that Defendant is improperly sharing PII through its installation of tracking software on the OTT Platform. *See, e.g.*, ¶¶ 1-3, 39, 41-42, 60-69.

In *Welbel*, the district court found that *Solomon*'s standard is relevant where actual knowledge is missing, but not where "[p]laintiffs allege that [defendant] had actual knowledge of Facebook's intent and abilities to use the disclosed information." 2026 WL 266561 at *4. As the *Welbel* court noted: "If the third party who receives the information uses it in such a way that the defendant knew about or reasonably could have foreseen, then liability for disclosure in that circumstance is not unfair or unreasonable." *Id.* at *5.[12] Here, Plaintiffs allege that Defendant knowingly gathers PII and uses that PII for its own financial gain, including that it transmitted Plaintiffs' Facebook IDs together with their video-viewing activity to Meta through the Tracking Tools embedded in the OTT Platform. *See, e.g.*, ¶¶ 71, 85, 94, 97.

**b. *Solomon*'s "ordinary person" test is textually untenable**

*Solomon*'s "ordinary person" standard violates basic precepts that courts are to refrain from judge-made, atextual tests as "gloss" on federal statutes. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025); *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223 (2025); *A.J.T. v. Osseo Area Schs., Ind. Sch. Dist. No. 279*, 605 U.S. 335 (2025). As noted above, the *Solomon* court manufactured such a "gloss" by creating an "ordinary person" standard that is untethered to the statutory language of the VPPA.

---

[11] *See also, e.g.*, *Manza*, 784 F. Supp. 3d at 1117; *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023); *Haines v. Cengage Learning, Inc.*, 2025 WL 2336089, at *8 (S.D. Ohio May 5, 2025), *R&R adopted*, 2025 WL 2045644 (S.D. Ohio July 22, 2025).

[12] Similarly, in *Manza*, the court noted that *Solomon* "creates a substantial loophole in the VPPA's coverage and allows easy evasion[.]" 784 F. Supp. 3d at 1122.

The Supreme Court disfavors reading atextual elements into statutory claims. *See Ames*, 605 U.S. at 308-09; *see also Antrix*, 605 U.S. 226; *A.J.T.*, 605 U.S. at 343-45; These three unanimous cases, all decided after *Solomon*, make clear that judge-made, atextual rules are improper. Thus, this Court should not adopt the *Solomon* standard.[13]

**2. Plaintiffs allege that Vimeo knowingly disclosed PII to third parties in violation of the VPPA.**

While Defendant argues it could not have "knowingly" transmitted Plaintiffs' sensitive information, the Complaint plainly alleges that "Vimeo's conduct was knowing and willful." ¶ 263. As Plaintiffs make clear, "[a]s a sophisticated technology company, Vimeo understood the functionality of VHX and other Tracking Tools and knew that their deployment would result in the interception and disclosure of Subscribers' communications." [14]. Importantly, disclosure only needs Defendant to have exposed Subscribers' data to third parties, which it has done through its implementation of tracking software through the OTT Platform.

Defendant provided precise instructions telling the OTT sites how to configure and implement the Tracking Tools and facilitate collection of sensitive information. ¶¶ 70-82. Plaintiffs further allege that: (a) "Vimeo further provided tools, configurations, and technical guidance to OTT Website operators that were designed to obscure Vimeo's role in the operation, administration, and data processing functions of the OTT Website;" and (b) "Vimeo possessed

[13] Regardless, various courts nationwide have adopted different versions of an "ordinary person" standard. *Compare Solomon*, 136 F.4th at 54 (ordinary person would not understand words interspersed with "many characters, numbers, and letters"), *with Chandra v. Prager Univ. Found.*, 2026 U.S. Dist. LEXIS 33002, at *9-10 (C.D. Cal. Jan. 27, 2026) (disagreeing with *Solomon's* "rather limiting view of the ordinary person's technological capabilities" and allowing pixel-based VPPA claims to survive after applying the Ninth Circuit's formulation of the "ordinary person test"), *and In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 at 289 n. 174 (noting Facebook identifiers qualify as PII in California, but leaving the question open in the Third Circuit). Plaintiffs meet the ordinary person standard as adopted by courts outside the Second Circuit.

[14] *See also, e.g.*, *id*. ¶¶ 201, 245.

superior and exclusive knowledge that the Tracking Entities' Tracking Tools embedded within its OTT Websites would disclose Subscribers' Sensitive Information." ¶¶ 200-01. There is nothing in the record indicating Defendant lacks knowledge about how the OTT sites it partners with are configured and the allegations in the Complaint support the inference that Vimeo does possess such knowledge. To the extent the Court believes more specific allegations are necessary to establish Vimeo had "specific knowledge" as to how any particular OTT website was configured, Mem. at 10, that issue can be addressed through an amendment.

**3. Plaintiffs used Defendant's OTT Platform to subscribe to the "goods or services" at issue here.**

Under the VPPA, a "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710. As Plaintiffs allege, "Vimeo operates a revenue-sharing and subscription-based video streaming service offering an 'Over-The-Top' streaming solution (the 'Vimeo OTT Platform' or 'OTT Platform')." ¶ 1. In brief, Defendant's "VHX Tracking Tool" is integrated into OTT Websites "to monitor Subscriber activity, including which webpages a Subscriber visits, when those webpages were published, and which videos a Subscriber interacts with. VHX operates invisibly in the background of the OTT Websites." ¶ 118. And when "Subscriber visits a webpage, VHX records the visit and attaches a unique identifier to that Subscriber's session. *Id*. Thus, when a consumer subscribes to and uses an OTT website, it is necessarily using Defendant's OTT Platform. *Id*. ¶¶ 122-25. These allegations are sufficient at this time.

**C. Plaintiffs' allegations adequately and plausibly state a claim for invasion of privacy.**

Congress passed the VPPA in 1988 after a newspaper "published Supreme Court nominee Robert Bork's video rental history." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) (internal quotations omitted). In response, Congress passed the VPPA "[t]o

preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-11.[15]

In the VPPA context, pre-[16] and post-*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021),[17] courts have consistently held that alleged VPPA claims provide a concrete injury because they amount to a privacy violation. Traditionally, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Second Restatement § 652B. "The invasion may be by … investigation or examination into his private concerns, as by opening his private and personal mail[.]" *Id.* § 625B cmt. b. "[I]nvasion of privacy … does not depend upon any publicity given to the person whose interest is invaded or to his affairs." *Id.* § 652B cmt. A. Thus, Plaintiffs' claims are the very type of harms the VPPA is aimed at protecting and providing a remedy for in the face of a violation. *See, e.g.*, *Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1229-30 (D.C. Cir. 2025); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017).

Defendant attempts to avoid the purpose and text of the VPPA by arguing Plaintiffs' information is merely "personal" and not "private." Mem. at 15 (citing *Vega v. Chicago Park Dist.*, 958 F.Supp.2d 943, 959 (N.D. Ill. 2013)). While Defendant's motion points out certain private facts, *id.*, it elides the "[o]ther examples of prying into private matters" such as "opening a person's mail, searching a person's safe or wallet, and reviewing a person's banking

---

[15] *See also Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 (D. Mass. 2024); *Eichenberger*, 876 F.3d at 983.

[16] *See, e.g.*, *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 666-67 (S.D.N.Y. 2015).

[17] *See, e.g.*, *Cantu v. Tapestry, Inc.*, 2023 WL 4440662, at *4 (S.D. Cal. July 10, 2023); *Feldman*, 659 F.Supp.3d at 1014-16.

information." *Id*. The *Vega* court expressly rejected the defendant's argument that plaintiff did not plead any "facially embarrassing" or "offensive behavior" noting that allegations related to "peering into windows" which is "precisely the type of activity that leads to observing private behavior." *Vega*, 958 F.Supp.2d 960. As the VPPA-related cases make clear, the allegations here that Defendant improperly shared their video viewing histories without first obtaining "distinct and separate" "written consent,"18 U.SC. § 2710(b)(2)(B), are far more akin to the "unconsented prying into private details." *Pileggi,* 146 F.4th at 1229-30.

Defendant's argument that Plaintiffs "volunteered" their information does not undermine their claims. Mem. at 16 (citing *Hannant v. Culbertson Mem. Hosp.*, 2025 WL 2413894, *15 (C.D. Ill. Aug. 20, 2025)). In *Hannant*, the "[p]laintiff's allegations concern[ed] a subsequent disclosure of information, not a wrongful initial acquisition of information." 2025 WL 2413894, at *15. As the *Hannant* court recognized, "'[t]he basis of the tort is not publication or publicity. Rather, the core of this tort is the offensive prying into the private domain of another.'" *Id* at *14. (citation omitted). Here, Plaintiffs' claim rests on the wrongful acquisition and interception of their information, not merely its later disclosure. Plaintiffs have made clear that they would not have used the OTT websites had they known Defendant would be monitoring and distributing their video viewing history. ¶¶ 15, 27, 37. Likewise, Plaintiffs did not provide written consent to the collection of their video viewing history in a distinct and separate form. ¶¶ 16, 28, 38.

Under Illinois law, the elements of intrusion upon seclusion are "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1018 (2004). As to the fourth element, in addition to the allegations throughout

the Complaint related to Defendant improperly sharing their private information, Plaintiffs specifically alleged that "[t]his invasion of privacy is serious in nature, scope, and impact" and that it "constitutes an egregious breach of the social norms underlying the privacy right," ¶ 243-44. To the extent the fourth element requires an express allegation of anguish, Plaintiffs should be permitted to amend. Defendant's motion to dismiss Count II should be denied.

### D. Plaintiffs' allegations adequately and plausibly state a claim under the Federal Wiretap Act

Vimeo invokes two exceptions under the FWA, neither of which applies here. And even if the party exception did apply, Vimeo's conduct would still fall within the crime-tort exception (§ 2511(2)(d)), discussed further below.

As to the party exception, the "relevant inquiry is whether the defendant is a participant in the conversation, as opposed to a non-participant that uses other means to gain access to -- *i.e.*, intercept -- the communication." *Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (citation omitted). As the Complaint alleges, Vimeo is the latter for all but the VHX tracking software: Vimeo intentionally and surreptitiously inserts itself between the consumer and the OTT website to obtain and profit from consumer data without consent. ¶¶ 5, 62, 64, 69, 73-81. Accordingly, the Court should not afford Vimeo the benefit of the party exception at this stage, before adequate discovery has taken place.[18]

Likewise, Defendant should not be permitted to avail itself of the FWA's "ordinary course of business" exception. Defendant argues that *Lisota v. Heartland Dental, LLC*, 2026 WL 91667 (N.D. Ill. Jan. 13, 2026), requires dismissal. Mem. at 18. *Lisota* was markedly different from the case here, as there were no allegations that the defendant "ever published, publicized, or

---

[18] Plaintiffs acknowledge that Vimeo's own tool, VHX, may qualify as a party because Vimeo owns and embeds it, but the remaining Tracking Tools, including the Meta Pixel, do not.

otherwise shared any information." 2026 WL 91667, at *3. The data collected was "entirely [for] internal use, so there [was] no alleged risk that any information reaches the public, or else becomes public knowledge. *Id.* Here, by contrast, the Complaint alleges that Vimeo publicly shared the electronic communications it intercepted. ¶¶ 3, 70-73, 82, 85. Vimeo is not a "ministerial intermediary." *Lisota*, 2026 WL 91667, at *3.

Moreover, if the Court were to find that the party exception applies (it should not), that exception does not extend to interceptions undertaken "for the purpose of committing any criminal or tortious act." § 2511(2)(d). Here, the crime-tort exception applies because Vimeo disclosed Plaintiffs' PII to Meta. *See Dawson v. Univ. of Phx., Inc.*, 2026 WL 92248, at *15 (N.D. Ill. Jan. 13, 2026) (applying the crime-tort exception where the disclosure of intercepted information, rather than the interception itself, violated VPPA); *see also Doe v. Deaconess Illinois Union Cnty. Hosp., Inc.*, 2025 WL 2771415, at *10 (S.D. Ill. Sept. 29, 2025) (same, as to HIPAA). Furthermore, whether the disclosure was motivated by commercial gain, rather than the commission of a crime or tort, is immaterial. *See Deaconess*, 2025 WL 2771415, at *11. Defendant's motion to dismiss Plaintiffs' FWA claim should be denied.

**E. Plaintiff Pritchard's Claims Are Not Time-Barred**

Defendant is incorrect that Plaintiff Pritchard's claims are time-barred, *see* Mem. at 19, because "[t]he discovery rule 'postpone[s] the beginning of the limitations period to the date when a plaintiff discovers he has been injured." *Bloyer v. St. Clair Cnty. Ill.*, 2016 WL 739033, at *2 (S.D. Ill. Feb. 25, 2016) (citation omitted). "[T]he question [in this context] [i]s 'whether *any* set of facts that if proven would establish a defense to the statute of limitations[,]' and … where a plaintiff relies on the discovery rule, a determination of timeliness is premature at the pleading stage." *Id.* (alteration adopted) (emphasis in original) (quoting *Clark v. City of Braidwood*, 318

F.3d 764, 768 (7th Cir. 2003)). Indeed, "[p]laintiffs are not required to anticipate or allege facts that would defeat affirmative defenses …, [and] 'a court typically cannot dismiss a complaint for failure to satisfy a statute of limitations until summary judgment.'" *Id.* (quoting *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2009)).

Here, Plaintiffs allege that Defendant "designed [the OTT Platform] to hide [its] participation," and that it "provides instructions for OTT Websites to operate behind a custom domain by making 'DNS configurations that reroute [the OTT Websites'] customers' to a custom domain name.'" ¶¶ 64, 68. "Put another way, [Defendant] instructs OTT Website owners how to conceal [its] involvement," and Defendant's "role in designing and operating the technical infrastructure of the OTT Website is not disclosed." *Id.* ¶¶ 69, 125; *see also, e.g.*, *id.* ¶¶ 194-202 (noting steps taken by Defendant to hide its involvement). Because Defendant concealed its role in the OTT Websites, Pritchard could not have discovered the conduct underlying her claims within the limitations period. *See* ¶¶ 64, 68, 69, 194-202. Such allegations overcome Defendant's statute of limitations defense at this stage. *See Sidney Hillman Health Ctr. of Rochester v. Abbot Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)."); *Bloyer*, 2016 WL 739033, at *2 (allegation that conspiracy "was inherently self-concealing" survived dismissal).[19]

[19] Defendant's Rule 9(b) argument fails on its face because it demands a level of particularity the Seventh Circuit does not require where, as here, the facts establishing concealment lie peculiarly within the defendant's control. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). Plaintiffs allege precisely the kind of concealment whose mechanics are knowable only to Defendant. Accordingly, dismissal is inappropriate.

## F. Plaintiffs Have Class Standing

Plaintiffs have standing to bring claims on behalf of the entire proposed Class of OTT Subscribers because, contrary to Defendant's characterization (*see* Mem. at 20), the Class all used the same product: the OTT Platform. *See, e.g.*, ¶¶ 1-3, 126, 141, 209.

As an initial matter, Defendant's argument raises a Rule 23 question that need not be resolved now: whether Plaintiffs may represent subscribers of OTT Websites they did not personally use. Defendant's authority does not support its position: in *Payton v. County of Kane*, the Seventh Circuit reversed a pleading-stage standing dismissal where the named plaintiffs were injured by only two of nineteen defendants, holding that they had standing to pursue their own claims and that whether the suit could reach the remaining defendants was a question of Rule 23(a)(3) typicality, not Article III standing. 308 F.3d 673, 678-80 (7th Cir. 2002).

Defendant's remaining authorities are consumer product-labeling cases challenging discrete goods with different labels and ingredients the plaintiff never bought and where the injury was product-specific by definition. *See Willard v. Tropicana Mfg. Co.,* 577 F. Supp. 3d 814 (N.D. Ill. 2021); *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653 (N.D. Ill. 2024); *Gibson v. Albertsons Companies, Inc.,* 754 F. Supp. 3d 793 (N.D. Ill. 2024). Here, Plaintiffs allege a single, uniform Platform whose Search Bar and tracking architecture "behave[] identically" across every OTT Website (¶¶ 70, 126, 141), and that uniformity makes the named Plaintiffs' injuries representative of the Class's. Any differences in how individual OTT Website operators configured trackers present a typicality dispute for certification on a developed record—not a basis to dismiss claims the named Plaintiffs plainly have standing to bring. *See Waggener Van Meter v. Mondelēz Int'l, Inc.*, 2025 WL 3678444, at *6 (N.D. Ill. Dec. 18, 2025) (citation omitted).

Dated: June 15, 2026

Respectfully submitted,

By: */s/ Patrick O. Muench*
Patrick O. Muench
BAILEY & GLASSER LLP
318 W. Adams Street, Suite 1512
Chicago, IL 60606
T: 312.500.8680
F: 304.342.1110
pmuench@baileyglasser.com

Mark S. Reich**
LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, NY 10004
T: 212.363.7500
F: 212.363.7171
mreich@zlk.com

Michael L. Murphy*
BAILEY & GLASSER LLP
1055 Thomas Jefferson St. Suite 540
Washington, DC 20007
T: 202.463.2101
F: 202.463.2103
Email: mmurphy@baileyglasser.com

John Roddy*
BAILEY & GLASSER LLP
101 Arch Street, 8th Floor
Boston, MA 02110
T: 617.439.6730
F: 617.951.3954
jroddy@baileyglasser.com

* admitted *pro hac vice*
** *pro hac vice* motion forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, I electronically filed the foregoing **Plaintiffs' Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)** using this Court's EM/ECF service, which will provide copies to all parties/counsel of record registered to receive CM/ECF notification.

*/s/ Patrick O. Muench*