UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SAVVA DELIYANNIDES, FRED RAMOS, FAITH PRITCHARD, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIMEO.COM, INC.,<br><br>Defendants. | Case No. 1:26-cv-01915<br><br>Honorable John Robert Blakey |

**REPLY IN SUPPORT OF DEFENDANT VIMEO.COM, INC.'S**
**MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. New York Law Applies to the Question of Contract Formation. ..... 2

B. Plaintiffs Are Bound by the Terms of The Arbitration Agreement. ..... 3

1. Plaintiffs Had Reasonably Conspicuous Notice of Vimeo's Terms. ..... 4

2. Pritchard is Bound by the 2024 Terms. ..... 8

C. The Arbitrator Must Decide Whether Plaintiffs' Claims Fall Within the Arbitration Agreement's Scope. ..... 10

1. The Court Must Enforce the Delegation Provision. ..... 10

2. In Any Event, Plaintiffs' Claims Fall Squarely Within The Definition of "Covered Privacy Claims." ..... 11

III. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accord Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................7

*Amakua Dev. LLC v. Warner*,
411 F. Supp. 2d 941 (N.D. Ill. 2006) ....................2

*Barrows v. Brinker Restaurant Corp.*,
36 F.4th 45 (2d Cir. 2022) ....................6

*Baugus v. Event Tickets Ctr., Inc.*,
2026 WL 866840 (S.D.N.Y. Mar. 30, 2026) ....................6

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ....................3

*Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*,
49 F.4th 802 (2d Cir. 2022) ....................3

*Crawford v. Beachbody, LLC*,
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ....................5

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ....................11

*Davitashvili v. Grubhub Inc.*,
131 F.4th at 119–20 ....................12

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) ....................4, 6, 7, 8

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................9

*Fteja v. Facebook, Inc.*,
841 F.Supp.2d 829 (S.D.N.Y. 2012)....................4

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................9, 10

*Harris v. FSST Mgmt. Servs.*,
LLC, 686 F. Supp. 3d 734 (N.D. Ill. 2023)....................2

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hidalgo v. Amateur Athletic Union of United States, Inc.*,
468 F. Supp. 3d 646 (S.D.N.Y. 2020)....................6

*Hu v. Whaleco, Inc.*,
779 F. Supp. 3d 265 (E.D.N.Y. 2024)....................7

*Hubbert v. Dell Corp.*,
835 N.E.2d 113 (2005)....................6

*Johnson v. Human Power of N Co.*,
767 F.Supp.3d 845 (N.D. Ill. 2025)....................5

*Kobrand Corp. v. Abadia Retuerta S.A.*,
2012 WL 5851139 (S.D.N.Y. Nov. 19, 2012)....................6

*Mancilla v. ABM Indus., Inc.*,
2020 WL 4432122 (S.D.N.Y. July 29, 2020)....................3

*Marzano v. Proficio Mortg. Ventures, LLC*,
942 F. Supp. 2d 781 (N.D. Ill. 2013)....................2

*Nicosia v. Amazon.com, Inc.*,
2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017)....................4

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)....................6

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024)....................7

*Paul Davis Sys. of N. Ill. Inc. v. Paul W. Davis Sys.*,
1998 WL 749041 (N.D. Ill. Oct. 15, 1998)....................2, 3

*Nicosia v. Amazon.com, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y. 2019)....................4

*Revitch v. DIRECTV, LLC*,
977 F.3d 713 (9th Cir. 2020)....................12

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. Jul. 31, 2023)....................10

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)....................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) .....8

*Smith v. RPA Energy, Inc.*,
732 F. Supp. 3d 278 (S.D.N.Y. 2024).....7

*Thomas v. Guardsmark, Inc.*,
381 F.3d 701 (7th Cir. 2004) .....2

*Tinder v. Pinkerton Security*,
305 F.3d 728 (7th Cir. 2002) .....6

*West v. Uber Techs.*,
2018 WL 5848903 (C.D. Cal. Sep. 5, 2018).....9

*Wexler v. AT&T Corp.*,
211 F. Supp. 3d 500 (E.D.N.Y. 2016) .....12

*Whalen v. NBA Properties, Inc.*,
2025 WL 1948591 (N.D. Cal. Jul. 16, 2025).....8, 9, 10

*Wilson v. Redbox Automated Retail*, *LLC*,
448 F. Supp. 3d 873 (N.D. Ill. 2020) .....7

*Xin Tao v. Murphy*,
812 F. Supp. 3d 1117 (D. Nev. 2025).....13

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1–16
§ 2.....11
§ 3.....11
§ 4.....11

Federal Wiretap Act, 18 U.S.C. §§ 2510-2523 .....11

## I. INTRODUCTION

There is no genuine dispute that Fred Ramos and Faith Pritchard ("Arbitrating Plaintiffs") received notice of and assented to Vimeo's Terms. Ramos does not dispute that when he signed up for a Vimeo account in 2020, the sign-up screen disclosed: "By joining Vimeo, you agree to our Terms of Service and Privacy Policy." Ramos also does not dispute that the words "Terms of Service" were set off in contrasting bright blue font and hyperlinked to Vimeo's Terms containing a binding and enforceable arbitration agreement. Instead, he quibbles about whether blue font is sufficient to denote a hyperlink. It is. Federal courts consistently hold that sign-up pages with clear, blue-hyperlinked text to the full terms placed near a "Join" button—like Vimeo's—provide sufficient notice.

Pritchard, for her part, does not contest that Vimeo sent her an email in July 2024 informing her of Vimeo's updated terms, or that she continued to use Vimeo after that date. Her purported inability to "recall" that email—including whether she deleted it—is insufficient to create a disputed issue of fact. It is well-established that an email notifying users of updated terms, followed by continued use, binds users to such terms.

Plaintiffs' other efforts to avoid arbitration fail. As a threshold matter, New York law governs the question of contract formation. Contrary to Plaintiffs' argument, there is no question that the arbitration agreement encompasses the claims at issue here: "Covered Privacy Claims" are claims arising from Vimeo's alleged "collection, use, storage, analysis, or transfer" of "Personal Information." The Arbitrating Plaintiffs' VPPA, wiretap, and privacy claims fall squarely within this definition.

Plaintiffs do not dispute that if a valid agreement to arbitrate exists—it does—then the delegation provision requires an arbitrator to decide all further questions, including arbitrability. The Court should compel arbitration.

## II. ARGUMENT

### A. New York Law Applies to the Question of Contract Formation.

To the extent Plaintiffs contend that this Court should apply Illinois law to determine contract formation, they are wrong. Opp. Mot. Compel Arb. at 5, ECF No. 35 (hereinafter "Opp."). "To determine whether a valid agreement to arbitrate exists . . . [a] court must apply the choice of law rules of the forum state in which it sits to determine what substantive state law governs the dispute." *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 792 (N.D. Ill. 2013) (citing *Charles O. Finley & Co. v. Kuhn,* 569 F.2d 527, 542 (7th Cir. 1978)); *see also Harris v. FSST Mgmt. Servs.*, LLC, 686 F. Supp. 3d 734 (N.D. Ill. 2023) (enforcing choice of law provision designating tribal law while declining to enforce arbitration agreement as contrary to public policy). "Under Illinois law, an express choice of law provision in a contract will be given effect provided that (1) it does not contravene a fundamental public policy of Illinois, and (2) the state chosen bears a reasonable relationship to the parties or the transaction." *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 948 (N.D. Ill. 2006); *Paul Davis Sys. of N. Ill. Inc. v. Paul W. Davis Sys.*, 1998 WL 749041, at *3 (N.D. Ill. Oct. 15, 1998) (citing *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 753–54 (Ill. App. Ct. 1987)); *Thomas v. Guardsmark, Inc.,* 381 F.3d 701, 706 (7th Cir. 2004); Mem. ISO Mot. Compel Arb. at 8 n.8, ECF No. 25-1 (hereinafter "Mot.").

There is no dispute that the Arbitrating Plaintiffs created accounts and that "all Vimeo users, including Ramos and Pritchard, are required to agree to Vimeo's Terms to use the Vimeo Platform." Nezhnik Arb. Decl. ¶ 9, ECF No. 25-2; *see also* Ramos Decl. ¶ 1, ECF No. 35-1 (admitting he "signed up for a Vimeo account in 2020"); Pritchard Decl. ¶ 1, ECF No. 35-2 (admitting she "signed up for a Vimeo account in 2017"). Plaintiffs do not argue that applying New York law will contravene Illinois public policy. Nor can Plaintiffs contest that New York, the location of Vimeo's headquarters, bears a reasonable relationship to the parties and the claims.

Plaintiffs' reliance (Opp. at 5) on *Schnabel v. Trilegiant Corp.* is unavailing. 697 F.3d 110, 119 (2d Cir. 2012). There, the Second Circuit affirmed a decision declining to apply a choice-of-law clause because there was a dispute about whether the clause had been part of the contract when it was formed. *Id.* at 114–19. No such dispute exists here, and the Second Circuit has since confirmed that *Schnabel* represents only a "narrow" exception to the ordinary rule that choice-of-law clauses "are separated out from contracts for questions of validity." *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 816–17 (2d Cir. 2022). Where, as here, there is no question that the Terms include the choice-of-law clause (Mot. at 3), and the clause is not "specifically challenged," the choice-of-law clause must be enforced. *Commodities & Mins. Enter. Ltd.*, 49 F.4th at 816–17; *see also Paul Davis Sys.*, 1998 WL 749041, at *3 (applying a choice-of-law clause selecting Florida law when the plaintiff failed to argue that Florida law would violate Illinois public policy or that Florida bore no reasonable relationship to the parties or transaction); Mot. at 9–12 (citing cases).[1]

**B. Plaintiffs Are Bound by the Terms of The Arbitration Agreement.**

Vimeo has met its burden of demonstrating the existence of a valid agreement to arbitrate: it produced (1) authenticated copies of the applicable Terms; (2) a declaration explaining what Ramos and Pritchard would have seen when they signed up for Vimeo accounts; and (3) the July 2024 email notice to Pritchard with the updated Terms containing the mandatory arbitration clause. *See* Nezhnik Arb. Decl. ¶¶ 12–46; *see also Mancilla v. ABM Indus., Inc.*, 2020 WL 4432122, at

[1] Because Illinois and New York law impose the same requirements for contract formation, the result would be the same. *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015) (noting that the laws of "New York, California, and Illinois . . . are substantively similar with respect to the issue of contract formation").

*6 (S.D.N.Y. July 29, 2020); *see Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 834–35 (S.D.N.Y. 2012) (relying on declarations and screenshots in evaluating the sign-up process); *Nicosia v. Amazon.com, Inc.*, 2017 WL 10111078, at *5 n.14 (E.D.N.Y. Aug. 18, 2017), *R. & R. adopted*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019) (same). Vimeo has also met its burden of showing that the Arbitrating Plaintiffs had "reasonably conspicuous notice" of the arbitration agreement. *Nicosia*, 384 F. Supp. 3d at 262.

**1. Plaintiffs Had Reasonably Conspicuous Notice of Vimeo's Terms.**

Both Arbitrating Plaintiffs received reasonably conspicuous notice of the Terms and the arbitration agreement. Mot. at 3–7; *id.* at 9–10. Courts routinely find that sign-up or purchase pages like Vimeo's provide reasonably conspicuous notice where they clearly state that by joining, signing up for, or purchasing a service, the user is agreeing to the hyperlinked terms.

Notably, in *Domer v. Menard, Inc.*, the Seventh Circuit affirmed the district court's order compelling arbitration where the disclosure of the terms was less clear and appeared on a more cluttered page than Vimeo's. 116 F.4th 686 (7th Cir. 2024). In *Domer*, most of the page was taken up by the billing and credit card information entered by the user and a bright blue "submit order" button appeared to the right. Directly beneath the "submit order" button appeared an advertisement to "Use your Menards BIG Card and save BIG!," followed by a bullet disclosing a 2% quarterly rebate. *Id.* at 692. The bottom of the screen contained "an additional note to purchasers" consisting of three sentences, beginning with "Please note." *Id*. The last sentence stated: "By submitting your order you accept our Terms of Order." *Id*. The additional note did not contain a hyperlink to the Terms; that hyperlink appeared further down the page, in green contrasting font, which was not underlined. *Id.* The Seventh Circuit found that the totality of the disclosure provided reasonably conspicuous notice of the terms, and that the plaintiff had assented by submitting his order. *Id.* at 696–701. Here, the notice was clearer than in *Domer*: Vimeo's sign-up page unambiguously

informed the Arbitrating Plaintiffs that "By joining Vimeo, you agree to our Terms of Service, Privacy Policy, and Cookie Policy." "Terms of Service," "Privacy Policy," and "Cookie Policy" were hyperlinked in bright blue text. Nezhnik Arb. Decl. ¶ 36.

Plaintiffs received conspicuous notice of Vimeo's Terms under both New York and Illinois law.[2] Courts in the Seventh Circuit consider the following factors when deciding whether a disclosure provides fair notice: "(1) the simplicity of the screen; (2) the clarity of the disclosure; (3) the size and coloring of the disclosure's font; (4) the spatial placement of the hyperlink; and (5) the temporal relationship to the user's action." *Johnson v. Human Power of N Co.*, 767 F.Supp.3d 845, 852–53 (N.D. Ill. 2025) (quoting *Domer*, 116 F.4th at 695); *see also Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (citing *Swift v. Zynga Game Network, Inc.,* 805 F.Supp.2d 904, 911–12 (N.D. Cal. 2011); *Fteja,* 841 at 835) ("Courts have held that a modified or hybrid clickwrap/browsewrap agreement constitutes a binding contract where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the "I Accept" button and clicks that button.").

Plaintiffs do not challenge the simplicity of the sign-up screen, nor can they. It contained limited text, in neatly presented boxes, and disclosed that "[b]y joining Vimeo, you agree to our Terms of Service." *See* Mot. at 4. Instead, Plaintiffs argue that they do not "recall seeing any hyperlinked Terms during the account sign-up process," the bright blue font was not sufficiently conspicuous, and "Terms of Service" ought to have been underlined. Opp. at 6. None of these arguments has merit.

As a threshold matter, it does not matter if Plaintiffs "recall" seeing the hyperlinked terms—that question is irrelevant to constructive notice and fails to create an issue of triable fact

[2] As discussed *supra* at Section A, New York law applies here.

given Vimeo's declaration. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735–36 (7th Cir. 2002) (that plaintiff "does not remember receiving . . . the brochure" does not controvert affidavits that "indicate that the brochure was definitely sent and presumably received"); *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) ("Where a party merely states that she cannot *recall* signing an agreement (as opposed to *denying* she has done so), such a declaration ordinarily fails to create a triable issue of fact." (emphasis in original)); *Kobrand Corp. v. Abadia Retuerta S.A.*, 2012 WL 5851139, at *4 (S.D.N.Y. Nov. 19, 2012) (citing *BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996)) ("[S]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment.").

And contrary to Plaintiffs' argument that Vimeo's bright blue font was insufficient, the Seventh Circuit has explicitly recognized that "the use of a contrasting font color (typically blue)" is among the "[c]ustomary design elements denoting the existence of a hyperlink." *Domer*, 116 F.4th at 697–98 (internal citation omitted); *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121–22 (2005) (holding that the statement "'All sales are subject to Dell's Term[s] and Conditions of Sale'" and conspicuous blue hyperlinks to those terms provided adequate notice); *Baugus v. Event Tickets Ctr., Inc.*, 2026 WL 866840, at *13 (S.D.N.Y. Mar. 30, 2026) (compelling arbitration where the "terms & policies" hyperlink was in "a contrasting blue color" which "adds to the conspicuousness"); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) (finding sufficient notice where, *inter alia*, the notice hyperlink was conspicuously distinguished in bright blue font); *Hidalgo v. Amateur Athletic Union of United States, Inc.*, 468 F. Supp. 3d 646, 657 (S.D.N.Y. 2020) (compelling arbitration where the terms "can be accessed through the hyperlinks and are marked with the distinctive blue color characteristic of hyperlinks").

Equally unavailing is Plaintiffs' argument that a hyperlink must be underlined to provide sufficient notice. The Seventh Circuit holds otherwise. *Domer*, 116 F.4th at 692 (enforcing arbitration agreement where "Terms of Order" appeared in green contrasting font at bottom of check-out page, with no underlining)*; see also Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 284 (E.D.N.Y. 2024) (finding terms of service enforceable even where hyperlinked text was "devoid of underlined text"); *Smith v. RPA Energy, Inc.*, 732 F. Supp. 3d 278, 286–87 (S.D.N.Y. 2024) (compelling arbitration because "it hardly matters" if the hyperlink was not "blue and underlined," but "instead was contained in a green button."); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) ("That the links are not blue, underlined, or capitalized does not undercut the district court's conclusion that Running Warehouse provided Arcilla with "reasonably conspicuous notice" of the Terms.").

Plaintiffs' cited cases are inapposite. Opp. at 6–7. In *Wilson v. Redbox Automated Retail*, *LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020), the district court found that the hyperlink to the defendant's terms of use was not reasonably conspicuous because it appeared in white text, which did not provide sufficient contrast to the surrounding light grey text against a black background. *Id.* at 885. By contrast, Vimeo's hyperlinked terms were set off in bright blue font against the surrounding white text and contrasting background, which the *Wilson* court suggested would be sufficient. *Id.* (citing *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018), for the proposition that "[w]hile not all hyperlinks need to have the same characteristics, they are commonly blue and underlined")*; accord Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 854 (9th Cir. 2022) (recognizing that blue is "the color typically used to signify the presence of a hyperlink").

*Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir. 2016), is likewise distinguishable. There, bold text beneath the scroll box *did not* inform the user that clicking the box provided assent to terms and instead stated that clicking authorized "TransUnion to obtain access to the purchaser's personal information." *Id.* at 1035. Here, Vimeo's sign-in page clearly stated "By joining Vimeo, you agree to our Terms of Service, Privacy Policy, and Cookie Policy." Mot. at 3–4.

Plaintiffs' arguments about the spatial placement of the hyperlink are similarly unconvincing. "Text advising users of the terms should be spatially coupled with the act deemed to manifest assent to those terms." *Domer*, 116 F.4th at 698. Vimeo's sign-up page had a single call to action that manifested assent: joining Vimeo. And Vimeo disclosed directly below the join buttons that "[b]y joining Vimeo, you agree to our Terms of Service." Mot. at 3. The spatial placement of the hyperlink is far more proximate here compared to that in *Domer*, which the Seventh Circuit found sufficient. *See Domer*, 116 F.4th at 699. Here, as in *Domer*, "the disclosure and hyperlinks are placed directly below" the area where users manifest assent, allowing the user to "see the disclosure and click the hyperlink while viewing the rest of the [] information" without needing "to scroll far, if at all, to read them." *Id.*

As a matter of law, Plaintiffs had reasonably conspicuous notice of the Terms at sign-up.

**2. Pritchard is Bound by the 2024 Terms.**

Pritchard fails to rebut that she is bound by the 2024 Terms based on her continued use of Vimeo.com after she received an email notifying her of those Terms. As detailed in the Motion, Pritchard logged into her Vimeo account "more than a dozen times" after the Terms had been updated to include a mandatory arbitration agreement. Mot. at 11. The law is clear that an email describing modified terms coupled with continued use is "'enough to establish reasonably conspicuous notice and assent to the [updated terms].'" *Whalen v. NBA Properties, Inc.*, 2025 WL 1948591, at *8 (N.D. Cal. Jul. 16, 2025) (quoting *Kamath v. Coinbase, Inc.*, 2024 WL 950163, at

*4 (N.D. Cal. Mar. 5, 2024)) (modification in original). When "Plaintiffs submit[] no evidence to rebut the presumption of [email] receipt … proof that the email was sent is sufficient to establish" that a plaintiff received conspicuous inquiry notice. *Whalen*, 2025 WL 1948591, at *8.

Pritchard's contention that she does "not recall receiving the July 2024 email" misses the mark. Opp. at 8. Courts have repeatedly found that emails informing users of updated terms provide "inquiry notice of changed terms such that they are binding on Plaintiff" and that continued use manifests assent. *See Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 932–33 (N.D. Cal. 2024) (email containing updated terms of service plus continued use sufficient to bind user); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sep. 5, 2018) (same applying Illinois law); *see also In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (same).

Moreover, courts have found reasonably conspicuous and therefore binding notice if there is evidence the email was sent, regardless of whether the plaintiff recalls receiving it. In *Ghazizadeh*, the court found that the defendant had "met its burden to show that Plaintiff received notice of the updated terms" because:

> While arguing that Coursera has not demonstrated that Plaintiff received the email, Plaintiff does not contend that he did not receive the email, either. Plaintiff suggests that given the high number of emails received daily, it is more likely that Plaintiff did not receive or review the email. The Court is sympathetic to that position, but Coursera has supplied evidence that it sent the notice email to Plaintiff's email address, and Plaintiff has not submitted any counter evidence that he did not receive the email updates.

737 F. Supp. 3d at 932. Pritchard's inability to recall receiving the notice email is no different from the *Ghazizadeh* plaintiff's.

The text and design of Vimeo's email matches those that courts have found sufficient to provide conspicuous notice of updated arbitration clauses. *See Sadlock v. Walt Disney Co.*, 2023

WL 4869245, at *12 (N.D. Cal. Jul. 31, 2023) (drawing attention to the clear subject line and bullet-points of key terms including arbitration agreement); *Ghazizadeh*, 737 F. Supp. 3d at 931–32 (same); *Whalen*, 2025 WL 1948591, at *7 (same). The subject line of Vimeo's email was "Updates to our Terms of Service," and the email highlighted four specific changes to the Terms, including changes to the dispute resolution process. Vimeo provided two bolded, underlined, blue hyperlinks at the top and bottom of the email to the Terms of Service, and a bolded, underlined, blue hyperlink to instructions for users to opt out of the arbitration agreement. Nezhnik Arb. Decl. Ex. E. Clicking on those conspicuous hyperlinks, *see supra* at Section B(1), took users to the Terms of Service, which highlighted and emphasized the updated arbitration agreement. Nezhnik Arb. Decl. ¶¶ 31-33.

On July 9, 2024, Vimeo sent Pritchard the updated Terms—including the updated arbitration agreement—by email. Pritchard subsequently logged into her account and, as of May 13, 2026, her account remains active. Nezhnik Arb. Decl. ¶¶ 23-24. The email to Pritchard provided reasonably conspicuous notice of the Terms (including their arbitration agreement), and her continued use manifested assent. Pritchard is bound by the 2024 Terms.

### C. The Arbitrator Must Decide Whether Plaintiffs' Claims Fall Within the Arbitration Agreement's Scope.

#### 1. The Court Must Enforce the Delegation Provision.

Plaintiffs do not dispute that, if the Court finds a valid agreement to arbitrate, the delegation clause requires that all questions of arbitrability be submitted to the arbitrator. Nezhnik Arb. Decl. Ex. A at 17. The question of whether Plaintiffs' claims fall within the arbitration agreement's scope is therefore a decision for the arbitrator—not this Court. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (holding "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "a court possesses no power

to decide the arbitrability issue" even if they consider the moving party's motion to be "wholly groundless"); *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 118 (2d Cir. 2025) (reversing district court declining to enforce delegation provision because "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract pursuant to §§ 2, 3, and 4 of the FAA, unless [Plaintiffs] challenged the delegation provision *specifically*" (emphasis in original)); 9 U.S.C. § 4 (requiring courts to compel arbitration "in accordance with the terms of the agreement [to arbitrate]").

Because Plaintiffs agreed to the Terms—including the arbitration agreement's delegation clause—the Court should compel arbitration and decline to reach Plaintiffs' scope-related arguments.

### 2. In Any Event, Plaintiffs' Claims Fall Squarely Within The Definition of "Covered Privacy Claims."

Even if the Court declines to enforce the delegation clause, Plaintiffs' claims are plainly within the scope of Vimeo's Terms of Service and the mandatory arbitration agreement.

Contrary to Plaintiffs' arguments, the definition of Covered Privacy Claims is not limited to claims involving Vimeo.com. Under all applicable versions of the Terms, "Covered Privacy Claims" are those that "aris[e] out of or relat[e] to (a) Vimeo's collection, use, storage, analysis, or transfer of Personal Information." Nezhnik Arb. Decl. Exs. A, C, F, H–K. The Terms expressly cover "Vimeo, Vimeo OTT, and Livestream services[.]" *E.g.*, Nezhnik Arb. Decl. Ex. F at 2; *id.* at Ex. H at 2. Plaintiffs cannot credibly dispute that their claims against Vimeo—VPPA violations, Federal Wiretap Act violations, and invasion of privacy—rest on allegations concerning Vimeo's collection, use, storage, or transfer of their personal information. Compl., ¶¶ 10, 11, 22, 23, 32, 33. The Complaint alleges that Plaintiffs' "Sensitive Information was disclosed to Third Parties through the placement of Tracking Tools" on third-party websites, by way of Vimeo's OTT

services. *Id.* at ¶¶ 41, 70–73. Plaintiffs cannot have it both ways. They cannot plead Vimeo as the source of the alleged privacy violations, then avoid arbitration by recasting the same conduct as mere "Third-Party Site" activity.

Plaintiffs' cited cases do not help them, as each involved either an attempt to require a plaintiff to arbitrate against an entity with which they had not directly contracted or claims with no nexus to the agreement. Neither situation exists here. In *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016), defendant AT&T Corporation sought to compel arbitration based on an agreement between plaintiff and AT&T Mobility, LLC—a "separate company." *Id.* at 501. Similarly, in *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), DIRECTV sought to compel arbitration based on an agreement between plaintiff and AT&T Mobility because AT&T Mobility was defined to include its "affiliates" and DirectTV was acquired by AT&T Mobility years after the contract with plaintiff was formed. *Id.* at 718–19. The court reasoned that the consumer "could not reasonably have expected" at the time of contracting to be bound as to that later-affiliated party. *Id.* at 718. Unlike in *Wexler* and *Revitch*, Vimeo seeks to enforce its own Terms of Service governing its direct relationship with Plaintiffs.

In *Davitashvili v. Grubhub Inc.*, 131 F.4th at 119–20, the Court—after determining that no delegation clause existed—found that antitrust claims "concern[ing] their access and use of *other* platforms and restaurants" and Grubhub's anticompetitive practices "ha[d] nothing to do with Plaintiffs' individualized use of Grubhub's website or mobile application." *Id.* Thus, the claims were outside the scope of the arbitration agreement, which was limited to claims arising from a user's "use of the Platform." *Id.* Likewise, the District Court in Nevada—applying Nevada and California law—declined to enforce an arbitration agreement because the court found the dispute was unrelated to the contract containing the arbitration agreement. *Xin Tao v. Murphy*, 812 F.

Supp. 3d 1117, 1125 (D. Nev. 2025). That is not the case here. Plaintiffs' agreement to arbitrate "Covered Privacy Claims" is not limited to use of Vimeo.com but covers all claims arising from Vimeo's alleged use of Plaintiffs' personal data—issues which indisputably rest at the core of Plaintiffs' VPPA, wiretap, and privacy claims.

## III. CONCLUSION

Accordingly, the Court should grant Vimeo's Motion and compel the Arbitrating Plaintiffs to arbitration.

Dated: July 6, 2026

Respectfully submitted,

By: /s/ Tiana Demas

Tiana Demas (6348680)
Matthew Kutcher (6275320)
Jamie Robertson (6345890)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6645
tdemas@cooley.com
mkutcher@cooley.com
jdrobertson@cooley.com

Alexander J. Kasner (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
akasner@cooley.com

*Attorneys for Vimeo.com, Inc.*