UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SAVVA DELIYANNIDES, FRED RAMOS, FAITH PRITCHARD, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIMEO.COM, INC.,<br><br>Defendants. | Case No. 1:26-cv-01915<br><br>Honorable John Robert Blakey |

**REPLY IN SUPPORT OF MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)**

## TABLE OF CONTENTS

Page


I. INTRODUCTION ..... ii

II. ARGUMENT ..... 2

A. Vimeo Is Not Subject to Personal Jurisdiction in Illinois. ..... 2

1. Vimeo's Provision of Technical Capabilities as a Third-Party Vendor Does Not Subject It to Specific Jurisdiction in Every State. ..... 3

2. Vimeo's Own Compliance with BIPA—A Statute Not at Issue Here—Does Not Create Specific Jurisdiction in Illinois. ..... 5

B. Plaintiffs Do Not Oppose the Transfer of This Action to New York. ..... 7

C. The Complaint Fails to State a Claim. ..... 8

1. Plaintiffs Offer Little Defense of Their Defective VPPA Claim. ..... 8

2. Plaintiffs Fail to State a Claim for Invasion of Privacy. ..... 10

3. Plaintiffs Fail to Plead a Violation of the Federal Wiretap Act. ..... 12

4. Plaintiff Pritchard's Claims Are Outside the Statutes of Limitations. ..... 14

5. Plaintiffs Lack Standing to Bring Claims on Behalf of Users of All OTT Websites. ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys. LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ....................2

*Ariel Invs., LLC v. Ariel Cap. Advisors LLC*,
881 F.3d 520 (7th Cir. 2018) ....................5

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015)....................9

*Bissessur v. Indiana Univ. Bd. of Trustees*,
581 F.3d 599 (7th Cir. 2009) ....................10

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................14

*Castelaz v. Estee Lauder Cos.*,
2024 WL 136872 (N.D. Ill. Jan. 10, 2024) ....................5

*Cater v. MyHeritage (USA) Inc.*,
2026 WL 851264 (N.D. Ill. Mar. 27, 2026)....................7

*Cole-Parmer Instrument Co. v. Pro. Lab'ys, Inc.*,
2021 WL 3053201 (N.D. Cal. July 20, 2021)....................5

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ....................11

*Crumpton v. Haemonetics Corp.*,
595 F. Supp. 3d 687 (N.D. Ill. 2022) ....................3

*Dawson v. Univ. of Phoenix, Inc.*,
2026 WL 92248 (N.D. Ill. Jan. 13, 2026) ....................8, 14

*Doe v. Deaconess Illinois Union County Hospital, Inc.*,
2025 WL 2771415 (S.D. Ill. Sep. 29, 2025) ....................14

*Dzananovic v. Bumble, Inc.*,
2023 WL 4405833 (N.D. Ill. July 7, 2023)....................3

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................11

*Fosnight v. Jones*,
41 F.4th 916 (7th Cir. 2022) ....................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Gaul v. SignalHire LLC*,
2024 WL 3652876 (C.D. Ill. Aug. 5, 2024) ........ 7

*Gonzalez-Koeneke v. West*,
791 F.3d 801 (7th Cir. 2015) ........ 2

*In re Google, Inc. Privacy Policy Litigation*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ........ 13

*Gullen v. Facebook.com, Inc.*,
2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ........ 2

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 12

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ........ 12

*Hughes v. NFL*,
2025 WL 1720295 (2d Cir. June 20, 2025) ........ 3

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........ 8

*Hunthausen v. Spine Media, LLC*,
678 F. Supp. 3d 1228 (S.D. Cal. 2023) ........ 9

*Joiner v. NHL Enterprises, Inc.*,
2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) ........ 10, 14

*Katz-Lacabe v. Oracle Am. Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 13

*Kurowski v. Rush System for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........ 11

*L-Nutra, Inc. v. Prevail Sols., LLC*,
2021 WL 6103084 (C.D. Cal. Oct. 12, 2021) ........ 5

*Lisota v. Heartland Dental, LLC*,
2026 WL 91667 (N.D. Ill. Jan. 13, 2026) ........ 13

*Manza v. Pesi, Inc.*,
784 F. Supp. 3d 1110 (W.D. Wis. 2025) ........ 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mayhew v. Candid Color Sys., Inc.*,
743 F. Supp. 3d 994 (N.D. Ill. 2024) ........................................................................2, 3

*McGoveran v. Amazon Web Servs., Inc.*,
488 F. Supp. 3d 714 (S.D. Ill. 2020)..............................................................................6

*Mollett v. Netflix, Inc.*,
2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) ...............................................................8

*Moomaw v. GeoSnapShot PTY LTD*,
2024 WL 991531 (S.D. Ill. Mar. 7, 2024) ......................................................................7

*NBA Properties, Inc. v. HANWJH*,
46 F.4th 614 (7th Cir. 2022) ..........................................................................................3

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016)....................................................................................11, 12

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002) ........................................................................................15

*Perry v. CNN, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ..................................................................................9, 15

*Pileggi v. Washington Newspaper Publishing Co.*,
146 F.4th 1219 (D.C. Cir. 2025)..............................................................................11, 15

*Pomaranski v. Chi. Prime Packers, Inc.*,
2024 WL 3950315 (N.D. Ill. Aug. 27, 2024) .................................................................4

*Powell v. Shiseido Americas Corp.*,
2024 WL 6861872 (C.D. Ill. Oct. 15, 2024)...............................................................4, 5

*Q.J. v. PowerSchool Holdings, LLC*,
2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) .................................................................4

*R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*,
895 F.2d 279 (7th Cir. 1989) ........................................................................................10

*Redd v. Amazon Web Services, Inc.*,
673 F. Supp. 3d 943 (N.D. Ill. 2023) ..............................................................................5

*Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLP*,
2017 WL 3386116 (N.D. Ill. Aug. 7, 2017) ...................................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Salazar v. NBA*,
118 F.4th 533 (2d Cir. 2024) ....................15

*Sidney Hillman Health Ctr. of Rochester v. Abbot Lab'ys, Inc.*,
782 F.3d 922 (7th Cir. 2015) ....................14

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) ....................9

*Stussy, Inc. v. Partnership & Unincorporated Associations*,
2026 WL 1536818 (N.D. Ill. June 1, 2026) ....................7, 8

*Vega v. Chicago Park District*,
958 F. Supp. 2d 943 (N.D. Ill. 2013) ....................12

*Voodoo SAS v. SayGames LLC*,
2020 WL 3791657 (N.D. Cal. July 7, 2020) ....................5

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ....................13

**Statutes**

18 U.S.C.
§§ 2510-2522 ....................12
§ 2710(a)(1) ....................9
§ 2710(b)(1) ....................8

Biometric Information Privacy Act, 740 ILCS 14/1–99 ....................5, 6, 7

Health Insurance Portability and Accountability Act, U.S. Code § 1320d-6 ....................14

**Other Authorities**

U.S. Const. Art. III ....................11

# I. INTRODUCTION

Plaintiffs' Complaint fails many times over. As explained in Vimeo's motion to dismiss, this lawsuit seeks to hold Vimeo liable for disclosures and intrusions it did not make. Plaintiffs' claims are based on viewing activity that occurred on independent OTT Websites, and they were brought in a court with no jurisdiction to hear them. Plaintiffs cannot cure these issues, and their Opposition confirms that their theory fails as a matter of law.

To begin, this Court lacks personal jurisdiction over Vimeo. Plaintiffs offer no specific facts showing that Vimeo targeted Illinois. Rather, Plaintiffs posit two unworkable, bank-shot theories—that Vimeo purposefully availed itself of Illinois by (i) providing code to OTT Websites used by residents everywhere, and (ii) by operating its own website, vimeo.com, in compliance with Illinois's biometric law (just as Vimeo complies with other state privacy laws). Courts have roundly rejected such untenable arguments, as they would subject nearly every online service provider to general jurisdiction in Illinois, undercutting the purpose of specific jurisdiction.

Plaintiffs' perfunctory arguments about the sufficiency of their substantive allegations are equally unavailing. As to their VPPA claim, Plaintiffs concede that Vimeo did not disclose Plaintiffs' PII, and no court has ever recognized Plaintiffs' facilitation theory. Plaintiffs also fail to explain why Vimeo would have knowledge of any such disclosures by third-party OTT Websites, who control the pixels at issue. Plaintiffs' argument—that Vimeo can be liable under the VPPA as an underlying technology vendor of the OTT Websites Plaintiffs used—cavalierly discards established law and, if accepted, would wreak havoc on internet commerce. Plaintiffs' remaining claims fare no better. Their invasion of privacy claim is not cognizable under New York law; moreover, Vimeo did not invade or intrude upon anything, and Plaintiffs agree they failed to plead actual damages. Plaintiffs also ignore multiple authorities squarely explaining why Vimeo is excepted from Plaintiffs' baseless federal wiretap claim. Because Plaintiffs "fail[] to

demonstrate how…amendment would cure the deficiencies" in their complaint, this Court should dismiss the complaint with prejudice. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015).

## II. ARGUMENT

### A. Vimeo Is Not Subject to Personal Jurisdiction in Illinois.

This Court lacks personal jurisdiction over Vimeo. As Plaintiffs admit, "there can be no specific personal jurisdiction over a defendant-vendor who simply provides technology to corporate customers from outside of Illinois with little to no knowledge of how that technology arrived in Illinois or was used by its residents." Opp. Mot. Dismiss, ECF No. 36 at 3 (quoting *Mayhew v. Candid Color Sys., Inc.*, 743 F. Supp. 3d 994, 1004 (N.D. Ill. 2024)) (hereinafter "Opp."). That is exactly the case here.

Vimeo is a New York- and Delaware-based third-party vendor (Compl. ¶ 39) offering white-labeled technology to OTT Websites that "simply . . . own[] or operate[] a website that is accessible in the forum state" (and are not alleged to themselves have targeted Illinois)—in short, a double layer of personal jurisdiction failure. *Advanced Tactical Ordnance Sys. LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). As Vimeo's uncontested declaration illuminates, the "OTT Platform is 'geographically neutral.'" Opp. at 4 (quoting Nezhnik 12(b)(2) Decl. ¶ 6, ECF 27–2); *see Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (website's use of biometric technology on "every user-uploaded photo," not just Illinois residents', demonstrates lack of Illinois targeting). Nor does "defendant-vendor [Vimeo] ha[ve] its own direct contacts with the forum state." Opp. at 3.

Plaintiffs do not assert that Vimeo targets Illinois corporate clients or end users; indeed, the uncontested facts show that "Vimeo has a national presence," "is available in all fifty states," and "does not direct its services to any one state over another." Nezhnik 12(b)(2) Decl. ¶ 6. Unlike

the cases Plaintiffs cite (Opp. at 3), Vimeo does not exploit Illinois by "conduct[ing] extensive marketing in Illinois" through billboards, hosting happy hours in Chicago, or using the improperly collected information at issue to further geographically target users. *E.g.*, *Dzananovic v. Bumble, Inc.*, 2023 WL 4405833, at *4 (N.D. Ill. July 7, 2023).[1] The only purported link between this case and Illinois is that "consumers in Illinois" unilaterally visited OTT Websites (not Vimeo). Opp. at 3. Yet personal jurisdiction cannot rest on either "the unilateral activity of the plaintiff or a third party." *Crumpton v. Haemonetics Corp.*, 595 F. Supp. 3d 687, 696 (N.D. Ill. 2022). Plaintiffs nonetheless spend pages straining to avoid this straightforward conclusion, while not disputing that they filed this lawsuit in this district to circumvent Second Circuit precedent that would foreclose their VPPA claim. Mot. Dismiss, ECF No. 27–1 at 5 (citing *Hughes v. NFL*, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025)) (hereinafter "MTD"). None of their arguments hold water.

**1. Vimeo's Provision of Technical Capabilities as a Third-Party Vendor Does Not Subject It to Specific Jurisdiction in Every State.**

Plaintiffs assert that Vimeo purposefully avails itself of Illinois because it "load[s] tracking tools onto Illinois consumers' browsers to track, collect, and transmit their data." Opp. at 4.[2] This, Plaintiffs claim, is as if "Defendant's own systems . . . reached *into Illinois*." *Id*. at 5. That is wrong on the facts *and* the law. Vimeo provides a customizable video technology skeleton to which its business-to-business clients can add further functionality, such as third-party trackers. Vimeo does

[1] Plaintiffs' cases are easily distinguishable. In *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022), defendant "shipped a product to the forum . . . after it had structured its sales activity . . . to invite orders from Illinois and developed the capacity to fill them." In *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLP*, 2017 WL 3386116, at *5 (N.D. Ill. Aug. 7, 2017), the defendant repeatedly sold thousands of dollars' worth of merchandise directly to Illinois retailers. *Mayhew,* 743 F. Supp. 3d at 1004, confirms that a defendant that merely provided technology to a third-party who deployed it in Illinois had insufficient contacts for personal jurisdiction.

[2] In fact, the Complaint does not allege that Vimeo "load[s] tracking tools." At most, Vimeo allegedly "deliver[ed]" tools to third-party websites, which "were loaded" onto Plaintiffs' devices. Compl. ¶¶ 41–42. These purposefully passive, fragmented allegations are insufficient. While Plaintiffs attempt to reframe their allegations in their opposition, they are bound by their pleadings.

not develop these trackers; third-party companies like Meta do that. Compl. ¶¶ 85–121. Nor does Vimeo install or configure the trackers; as Plaintiff's incorporated documents show, OTT Websites make those decisions. MTD at 3; *e.g.*, *Pomaranski v. Chi. Prime Packers, Inc.*, 2024 WL 3950315, at *1 & n.1 (N.D. Ill. Aug. 27, 2024) (exhibits to complaint control when in conflict with allegations). Vimeo also does not run the OTT Websites, operate or configure users' browsers, or decide whether information is disclosed. MTD at 2–3. Thus, as Plaintiffs' own allegations reveal, Vimeo has not delivered or transmitted anything into Illinois or to OTT Website users.

Moreover, multiple courts in this Circuit have held that a vendor does not "deliver[] the operative code" to Illinois users (Opp. at 4) or consent to specific jurisdiction merely because the vendor's technology is used by customer websites, and their users, in Illinois. In *Q.J. v. PowerSchool Holdings, LLC*, 2025 WL 2410472, at *4 (N.D. Ill. Aug. 20, 2025), plaintiffs asserted that defendant Heap "installed 'cookies' . . . in the devices of Illinois-based users." But the "installation of cookies [was] a function of Heap software that website operators—Heap's customers—integrate into their platforms," just as OTT Websites do here. *Id.* And like Vimeo, "Heap has no control over where its customers' website users might be found, and Heap [] made no effort to target Illinois or any other jurisdiction; it simply provides its software to website operators who want it." *Id.* Such "fortuitous" contacts in Illinois, "out of [the defendant's] control," failed to establish specific jurisdiction. *Id.* Likewise on all fours is *Powell v. Shiseido Americas Corp.*, 2024 WL 6861872 (C.D. Ill. Oct. 15, 2024). There, the defendant licensed its "Virtual Try-On technology" to website operators, which their customers then used (including in Illinois). This "attenuated" vendor relationship failed to establish specific jurisdiction. *Id.* at *5. Plaintiffs' assertions that the defendant "runs" the tool on a third-party website was, like here, backed by "no evidentiary support." *Id.* And the allegation that a vendor "downloads the code necessary to run

the [tool] onto Illinois consumers' devices while consumers are in Illinois" went nowhere: "downloading of code is simply in the nature of any website," and occurs "whenever any user, anywhere" visits the third-party website. *Id.* Similarly, in *Redd v. Amazon Web Services, Inc.*, 673 F. Supp. 3d 943, 946–47 (N.D. Ill. 2023), the court held that Amazon's provision of image-recognition technology to a website visited by Illinois plaintiffs was the "type of random, fortuitous, or attenuated contact [that] cannot give rise to personal jurisdiction." So too here.

**2. Vimeo's Own Compliance with BIPA—A Statute Not at Issue Here—Does Not Create Specific Jurisdiction in Illinois.**

Plaintiffs next argue that specific personal jurisdiction is proper because Vimeo's website, vimeo.com, complies with Illinois's biometric law (BIPA)—just as it complies with other state-specific privacy laws. Plaintiffs are mistaken. Courts regularly hold that a defendant's stated compliance with BIPA does not subject it to jurisdiction in Illinois.[3] *E.g.*, *Powell*, 2024 WL 6861872, at *9; *Castelaz v. Estee Lauder Cos.*, 2024 WL 136872, at *5 (N.D. Ill. Jan. 10, 2024).[4] Such "explicit reference[s] to BIPA" in privacy policies and terms of service neither "establish [n]or contribute to [defendant's] jurisdictional contacts with Illinois." *Powell*, 2024 WL 6861872, at *9. After all, under Seventh Circuit law, "'[k]nowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law.'" *Id.* (quoting *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th

[3] *E.g.*, *Voodoo SAS v. SayGames LLC*, 2020 WL 3791657, at *5 (N.D. Cal. July 7, 2020) (holding that specific reference to California privacy law showed only that defendant knew its product "might be purchased" in California, not that it was "specifically aimed" there); *Cole-Parmer Instrument Co. v. Pro. Lab'ys, Inc.*, 2021 WL 3053201, at *6 (N.D. Cal. July 20, 2021) ("compliance with [state] privacy policy does not…demonstrate" intentional targeting of that state); *L-Nutra, Inc. v. Prevail Sols., LLC*, 2021 WL 6103084, at *3 (C.D. Cal. Oct. 12, 2021) (citing to *Voodoo* and *Cole-Parmer* to reach same conclusion).

[4] Plaintiffs' attempt to distinguish *Castelaz* on the grounds that Vimeo does not have a declaration denying "sales" and "meetings" in Illinois (Opp. at 7) is a strawman. Plaintiffs never alleged any such sales or meetings. Plaintiffs also flip the burden and ignore Vimeo's unrebutted declaration showing the absence of any Illinois-specific targeting.

Cir. 2018)). Vimeo's proactive compliance with Illinois law is unremarkable; like many nationwide interactive websites, Vimeo accounts for "varying state laws across the country," "align[ing] with the laws of multiple jurisdictions, including California, Nevada, New Jersey, Oregon, and many more." Nezhnik 12(b)(2) Decl. ¶ 8. Plaintiffs' theory is also untenable in practice; any website that takes steps to comply with BIPA would face generalized jurisdiction in Illinois as to all claims, *disincentivizing* BIPA compliance.

Furthermore, Plaintiffs' allegations about BIPA compliance concern Vimeo's own website and direct customers—not its separate OTT Platform or OTT Website users like Plaintiffs. *See* Opp. at 5 n.3 (citing sources concerning Vimeo's website, not OTT Platforms); *Id*. at 8 (Vimeo's BIPA compliance applies to "its [i.e., Vimeo's] Illinois users," not OTT Website users); MTD at 2–3 (OTT Website subscribers never need to visit Vimeo.com). Likewise, Vimeo's AI guidelines concern videos that creators upload directly to Vimeo.com. *See* Opp. at 6 & nn.5, 6. Similarly, Plaintiffs' conclusion that Vimeo "shap[es]" its technology to target Illinois and thus does not act with "uniformity . . . nationwide" is sorely confused (*id.* at 7–8 & n.8); Vimeo's *OTT technology*—which is at issue here—operates the same regardless of geography. Nezhnik 12(b)(2) Decl. ¶ 6. Vimeo's *BIPA compliance* is insufficient to create jurisdiction as to its OTT Website services. Nor can any such OTT Website jurisdictional contacts be imputed to Vimeo. *E.g.*, *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 723 (S.D. Ill. 2020) (no personal jurisdiction over service provider based on a third party's use of service to collect biometric information).[5]

[5] Plaintiffs also make much of Vimeo's Terms reminding its users—OTT Websites and direct customers alike—to not use AI to violate any "applicable law" (Nezhnik 12(b)(2) Decl. Ex. A), which Plaintiffs assert means that "Defendant binds users of the OTT Platform to comply with Illinois law." Opp. at 8–9. This is puzzling; *Illinois* binds OTT Websites to comply with Illinois law. Reiterating to users the importance of complying with state-specific laws is not equivalent to Vimeo targeting Illinois—just as Vimeo's Terms reminding OTT platforms selling "to consumers located in the European Union" of their unique obligations does not create EU jurisdiction over

The BIPA cases Plaintiffs cite do not help them. In *Cater v. MyHeritage (USA) Inc.*, 2026 WL 851264, at *5 (N.D. Ill. Mar. 27, 2026), the defendant "marketed, sold, and shipped" genetic test kits in Illinois, then transmitted its customers' biometric information to third parties for marketing purposes—information it "would not have been in a position to unlawfully disclose . . . had it not targeted Illinois." Here, there is no allegation that Vimeo marketed, shipped, or sold anything in Illinois. The defendant in *Cater* also tailored the product at issue in the litigation to comply with BIPA; here, by contrast, neither Vimeo's website nor its treatment of biometric information is relevant to the claims. Plaintiffs' reliance on *Gaul v. SignalHire LLC*, 2024 WL 3652876 (C.D. Ill. Aug. 5, 2024), is further afield. There, the defendant purposefully availed itself of Illinois by "compil[ing] information on Illinoisans and us[ing] their Illinois residency as a marketing tool," which is not alleged here. *Id.* at *5. In *Moomaw v. GeoSnapShot PTY LTD*, 2024 WL 991531 (S.D. Ill. Mar. 7, 2024), the defendant website hired photographers to take photos at in-person events in Illinois and then sold the plaintiffs' biometric information extracted from those photos. In *Stussy, Inc. v. Partnership & Unincorporated Associations*, 2026 WL 1536818 (N.D. Ill. June 1, 2026), the defendant shipped the offending product to an Illinois address. Unlike *Moomaw* and *Stussy*, Plaintiffs do not allege Vimeo did anything physically in Illinois. None of Plaintiffs' cases support specific jurisdiction over an out-of-state third-party vendor like Vimeo for non-BIPA claims. The Court should dismiss this case for lack of personal jurisdiction.

**B. Plaintiffs Do Not Oppose the Transfer of This Action to New York.**

Plaintiffs are silent on Vimeo's alternative request—to transfer this case to the Southern District of New York, where Vimeo is headquartered. MTD at 7–8. They do not dispute that this court has done so in equivalent cases, and they do not address Vimeo's forum selection clause

---

Vimeo as to any OTT Websites' conduct. Nezhnik 12(b)(2) Decl. Ex. A at 3.

(specifying that privacy-related disputes must be litigated in SDNY). *Id.* The court should alternatively transfer to SDNY.

### C. The Complaint Fails to State a Claim

#### 1. Plaintiffs Offer Little Defense of Their Defective VPPA Claim.

As set forth in the Motion, Plaintiffs have failed to state a VPPA claim because they do not adequately allege Vimeo knowingly disclosed PII, or that Plaintiff Deliyannides was a subscriber. Plaintiffs' arguments to the contrary are unavailing.

*First*, Plaintiffs entirely ignore the threshold flaw in their VPPA claim; Vimeo is not alleged to have disclosed *anything*—yet the VPPA holds liable only a "provider who knowingly discloses." 18 U.S.C. § 2710(b)(1). Plaintiffs cite no authority for a facilitation theory of VPPA disclosure—which is unsurprising, given the VPPA's purpose and limited scope. MTD at 10–11.

*Second*, Plaintiffs fail to allege Vimeo's *knowing* disclosure—awareness that "it is disclosing certain information" *and* "that the information it is disclosing can be used to identify an individual's video purchases." *Manza v. Pesi, Inc.*, 784 F. Supp. 3d 1110, 1121–22 (W.D. Wis. 2025). Vimeo cannot be liable for a disclosure decision "outside of [its] control." *Mollett v. Netflix, Inc.*, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012). Ignoring every case cited by Vimeo (MTD at 10–11), Plaintiffs merely claim that Vimeo understands, as a "sophisticated technology company," that OTT Website customers *might* install the Pixel and *might* configure it to disclose information, which *might* constitute PII. Opp. at 13. But this is no different than asserting that Vimeo knows that its technology "transmit[s] . . . code"—a defective VPPA theory. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). Vimeo is not alleged to know whether and how companies "knowingly install[] the Pixel and configured it" to disclose PII. *Dawson v. Univ. of Phoenix, Inc.*, 2026 WL 92248, at *9 (N.D. Ill. Jan. 13, 2026). Their argument that "nothing in the record indicat[es] Defendant lacks knowledge" (Opp. at 14) flips the pleading

burden and contradicts Plaintiffs' incorporated documents, which show that Vimeo by default *turns off trackers* and delegates all such decisions to OTT Websites. MTD at 3.

Plaintiffs instead fixate on their *third* failing—that their claim fails under *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54–55 (2d Cir. 2025) (holding that disclosure of an FID and code string through the Pixel is not VPPA PII). Plaintiffs are desperate to evade the Second Circuit's well-reasoned and conclusive rejection of Pixel VPPA claims because, under *Solomon*, their claims are doomed. This clear attempt to dodge binding Second Circuit precedent underscores this Court's role in policing Plaintiffs' forum shopping to avoid bringing this suit where it belongs—SDNY—and this Court's own lack of specific jurisdiction over Vimeo.

*Finally,* Plaintiffs do not dispute that Deliyannides only subscribed to a third-party OTT Website (the Criterion Channel). MTD at 12. Plaintiffs instead offer a non-sequitur: "when a consumer subscribes to and uses an OTT website," that consumer "necessarily uses" Vimeo's OTT Platform technology. Opp. at 14. But "use" is irrelevant; Plaintiff must "rent[], purchase[], or subscribe[]" to Vimeo's "goods or services" to allege a VPPA claim. 18 U.S.C. § 2710(a)(1). If Plaintiffs are arguing that any subscriber to an OTT Website is by extension a subscriber or consumer of any of its technical vendors (like Vimeo) for purposes of the VPPA, this is a novel assertion: Plaintiffs cite no case to support this view, and Vimeo has provided substantial authority explaining why the VPPA provider-subscriber relationship must instead be direct and durable. MTD at 12–15 (citing *Perry v. CNN, Inc.*, 854 F.3d 1336, 1343 (11th Cir. 2017), *Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1233 (S.D. Cal. 2023), *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015)).[6]

[6] As Vimeo previously explained, Pritchard and Ramos never alleged they were subscribers to Vimeo (MTD at 13 n.14), and they cannot amend their pleadings via opposition. *See Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009). Plaintiffs' argument that they

### 2. Plaintiffs Fail to State a Claim for Invasion of Privacy.

Plaintiffs' opposition does nothing to resuscitate their invasion-of-privacy claims. To begin, Plaintiffs cannot even bring an intrusion-upon-seclusion claim because there is no such tort under New York law. *Joiner v. NHL Enterprises, Inc.* illustrates why. 2025 WL 2846431, at *12 (S.D.N.Y. Aug. 29, 2025), *report and rec. adopted in pertinent part,* 2025 WL 3126106 (S.D.N.Y. Sept. 29, 2025). There, like here, Illinois plaintiffs brought "intrusion upon seclusion" claims against a New York-based defendant in connection with the "placement of the [Meta] Pixel" on the defendant's website. *Id.* at *11.[7] And "New York (unlike . . . Illinois . . . ) does not recognize the tort of 'intrusion upon seclusion.'" *Id.* at *10. Given this conflict, the court held that New York, where the defendant made all Pixel-related decisions, had the "stronger interest . . . in applying its law" than Illinois, where plaintiffs resided. *Id.* at *12. And because "New York does not recognize a common law claim for invasion of privacy such as intrusion on seclusion," the tort claims were dismissed. *Id.* at *10. So too here: New York applies, given Vimeo's New York headquarters and choice-of-law clause, and New York does not recognize "intrusion upon seclusion" claims.

Next, Plaintiffs concede (Opp. at 17) their failure to plead the required "actual injury" element. *See* MTD at 16–17. "If the complaint fails to allege a requisite element necessary to obtain relief, dismissal is in order." *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989). Plaintiffs seek a do-over, asking "to amend" to provide "an express allegation of anguish." Opp. at 17. But Plaintiffs do not "suggest to the court the ways in which [they] might cure the defects" other than restating the missing element; in such cases, "[g]ranting leave to amend is pointless." *Fosnight v. Jones*, 41 F.4th 916, 924–25 (7th Cir. 2022).

---

are Vimeo subscribers because they subscribed to separate OTT websites is nonsensical, and Plaintiffs provide no support for this expansive interpretation of the VPPA.

[7] Plaintiff Ramos is in fact a Minnesota, not Illinois, resident, Compl. ¶ 17, further undermining the case for applying Illinois law.

Even still, Plaintiffs have alleged no *intrusion*. As in *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 848–49 (N.D. Ill. 2023) (which Plaintiffs ignore), a "disclosure[] of private personal information" does not suffice if defendant did not "pry[]" in the first place; a defendant thus cannot be liable for intrusion for "third-party cookies" collecting and "disclos[ing]" private information. Plaintiffs continue to accuse *some actor* of "acqui[ring] and intercept[ing]" their information (Opp. at 16)—but not Vimeo, which has not intruded on anything. Instead, the Complaint alleges Vimeo facilitated the "dissemination and/or misuse" of information that Plaintiffs believed "would remain confidential." Compl. ¶¶ 239, 241. Absent from the Complaint, and ignored by the Opposition, is any allegation that Vimeo itself intercepted, intruded, or pried.

Plaintiffs have also not alleged a "'highly offensive'" intrusion into private matters. MTD at 15. Plaintiffs instead cite irrelevant cases holding that, *for Article III standing purposes*, VPPA cases have a common-law analogue to privacy torts.[8] Opp. at 14–16. As the Third Circuit explained in *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 293–95 (3d Cir. 2016), the use of "tracking cookies," which "serve legitimate commercial purposes"—even to track video-watching habits—is not "sufficiently offensive, standing alone, to survive a motion to dismiss" on an "intrusion claim." *Accord Cook v. GameStop, Inc.*, 148 F.4th 153, 160 (3d Cir. 2025) (affirming dismissal of intrusion claim based on browser tracking, as "[m]ost of us understand that what we do on the Internet is not completely private"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collecting cases holding that "data collection and disclosure to third parties

---

[8] *Pileggi v. Washington Newspaper Publishing Co.*, 146 F.4th 1219, 1229–30 (D.C. Cir. 2025), recognized that whether "the disclosure of private video records is 'highly offensive'" for privacy torts is a separate question from *Pileggi*'s focus on "the concreteness of the [VPPA] injury under Article III." And *Eichenberger v. ESPN, Inc.* confirms, for standing purposes, that VPPA "codifies a context-specific extension of the substantive right to privacy" embodied in common-law torts—not that VPPA and intrusion torts are coextensive. 876 F.3d 979, 983–84 (9th Cir. 2017).

that is routine commercial behavior is not a highly offensive intrusion of privacy") (marks omitted). Plaintiffs' reference (Opp. at 15–16) to *Vega v. Chicago Park District*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013)—involving investigators "peer[ing] into the windows of [plaintiff's] private residence"—misses the point recognized by *Nickelodeon*: the *intrusion itself* must be highly offensive, and commonplace browser trackers are not comparable to rummaging through mail or prying open a safe. Opp. at 15.

Plaintiffs' reliance on *Hannant v. Culbertson* is similarly misguided. 2025 WL 2413894, at *15 (C.D. Ill. Aug. 20, 2025). As in *Hannant*, Plaintiffs "voluntarily utilized" the OTT Websites, "thereby volunteering the information" upon which they founded their claim—making intrusion impossible. *Id*. Plaintiffs' bare assertion that their claims are founded "on the wrongful acquisition and interception of their information" does not make it so. Opp. at 16. Indeed, Plaintiffs repeatedly admit that their theory is that third-party OTT Websites (not Vimeo) "improperly shared their video viewing histories" and "distribut[ed]" that information too broadly. *Id.* As in *Hannant*, Plaintiffs "collapse[] the distinction between intrusion and disclosure"—and only the former makes for a viable claim. 2025 WL 2413894, at *14.

**3. Plaintiffs Fail to Plead a Violation of the Federal Wiretap Act.**

Plaintiffs' FWA claim—based upon vague assertions of Vimeo's assistance with the "search bar interface" on OTT Websites (Compl. ¶¶ 126–134), which Plaintiffs seemingly abandon in their Opposition—likewise fails. As to the FWA's party exception, Plaintiffs concede they have no argument as to Vimeo's VHX tool. Opp. at 17 n.18. Otherwise, Plaintiffs assert that Vimeo is a non-participant that "surreptitiously insert[ed] itself between the consumer and the OTT website." *Id*. at 17. This is obviously baseless: OTT Websites choose to incorporate Vimeo's OTT services, and Vimeo publicly explains how its technology works. The Complaint paragraphs Plaintiffs cite concern Vimeo helping OTT Websites choose the design of their embedded video

players (*id.* (citing Compl. ¶¶ 5, 62, 64, 69))—hardly surreptitious, and nothing to do with the "Search Bar" theory. Compl. ¶ 126. Just as in *Zak v. Bose Corp.*, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019), Vimeo allegedly "is a participant in the conversation" by providing technological capabilities. *Id.* at *3 (rejecting plaintiff's attempt to disavow his own complaint allegations sinking his FWA claim). Notably, Plaintiffs do not respond to (and effectively concede) Vimeo's argument that it "had consent from one or more entities who were" parties to the conversation, MTD at 18 (citing *Katz-Lacabe v. Oracle Am. Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023)).

As for the ordinary course of business exception, Plaintiffs fail to respond to *In re Google, Inc. Privacy Policy Litigation*, 2013 WL 6248499, at *10–11 (N.D. Cal. Dec. 3, 2013) (*see* MTD at 18), holding that an interception of customer information to inform "core targeted advertising[] is within its business' ordinary course." Instead, Plaintiffs attempt to distinguish *Lisota v. Heartland Dental, LLC*, 2026 WL 91667, at *3 (N.D. Ill. Jan. 13, 2026), as only shielding "internal use"; Plaintiffs assert that "the Complaint alleges that Vimeo publicly shared the electronic communications it intercepted." Opp. at 18. Plaintiffs alleged no such thing, asserting only that Vimeo's technology allows OTT Websites to decide whether to install third-party trackers, which in turn (at OTT Websites' direction) may disclose information. Compl. ¶¶ 70–73 & n.19.

Plaintiffs' final gambit is to invoke the "crime-tort exception" to the FWA. Opp. at 18. To do so, Plaintiffs (again) baldly assert that "Vimeo disclosed Plaintiffs' PII to Meta." *Id.* To the contrary, the Complaint does not allege Vimeo itself disclosed anything, and Plaintiffs cannot amend their Complaint via opposition. Even then, Plaintiffs do not explain what crime or tort Vimeo intended to commit. Nor could they, as Plaintiffs "cannot rely upon either their VPPA claim or their state-law intrusion-upon seclusion claims to supply the tortious or criminal 'purpose'" for the crime-tort exception. *Joiner*, 2025 WL 2846431, at *8 (citing *Caro v. Weintraub*, 618 F.3d 94,

100 (2d Cir. 2010)). Plaintiffs' reliance on *Dawson* is similarly misplaced. 2026 WL 92248, at *14. There, the defendant unlawfully procured a third-party to intercept plaintiff's communications, which is not alleged here. *Id.* And *Doe v. Deaconess Illinois Union County Hospital, Inc.* likewise confirms that the crime-tort exception requires a "secondary act" beyond interception that violates a separate law (like HIPAA)—which Plaintiffs do not plausibly plead. 2025 WL 2771415, at *11 (S.D. Ill. Sep. 29, 2025) (finding *Caro* persuasive).

**4. Plaintiff Pritchard's Claims Are Outside the Statutes of Limitations.**

Plaintiff Pritchard does not dispute that her claims are time barred. MTD at 19. Instead, she hangs her argument entirely on the discovery rule and assertions that Vimeo "hid[]" and "conceal[ed]" its role—as well as the observation that "questions of timeliness are" usually "left for summary judgment." Opp. at 19 (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbot Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)). But Plaintiffs' own allegations support that Pritchard could have easily discovered that OTT Websites used Vimeo's technology well within the limitations period. Far from concealing its role as a back-end technology vendor, Vimeo publicized how its technology worked—which Plaintiffs in turn cited in bringing this case. *E.g.*, Compl. nn.18–19, 21–23, 25–29 (citing Vimeo webpages explaining full breadth of OTT technology). As for the Opposition's promise (Opp. at 19) of "steps taken by [Vimeo] to hide its involvement," Plaintiffs cite irrelevant allegations that Vimeo encourages OTT Websites to "customize the colors of the player" and "visually edit the website" as well as decide on their own whether to "remove Vimeo branding," "add their own logo," or customize their own URL. Compl. ¶¶ 64–68. Likening Vimeo's choice to let OTT Websites make their own aesthetic decisions to a campaign of concealment—undermined further by Vimeo's public guidance on its technology—fails even the lax discovery-rule pleading standard on a motion to dismiss.

### 5. Plaintiffs Lack Standing to Bring Claims on Behalf of Users of All OTT Websites.

Plaintiffs insist that they have sufficiently pleaded class standing because their class claims arise out of a single product, the Vimeo OTT Platform. Opp. at 20. And any shortcomings are, in Plaintiffs' view, best deferred to class certification—where Plaintiffs will make a doomed attempt to show typicality. *Id*. But Plaintiffs' argument ignores that their alleged harm stems not from the underlying architecture of a malleable technology service, the OTT Platform, but rather from a patchwork of installation, configuration, consent, and disclosure decisions made by hundreds of different OTT Websites. *E.g.*, MTD at 3. Indeed, each Plaintiff subscribes not to the OTT Platform, but to specific third-party OTT Websites; *those* are the relevant products for each claim.[9] Nor do Plaintiffs cite any caselaw endorsing their attempt to represent, in a single putative class, consumers who each use different OTT Websites. To the contrary, the law is clear that a putative class plaintiff lacks standing to pursue claims arising from products they did not purchase. *See* MTD at 19–20. Plaintiffs' cherry-picked discussion of *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002), is unavailing. There, the named plaintiffs were "personally injured" by the "very same" Illinois bail fee law "that caused the injuries to all other members of the proposed class." *Id*. Plaintiffs, by contrast, were each differently affected by distinct third-party OTT websites' independent decisions. The Court should prevent this scattershot attempt to manufacture class standing over thousands of OTT Websites that the individual Plaintiffs never used.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

[9] For this reason, VPPA putative class actions primarily proceed through users of individual websites or mobile apps—such as NBA.com (*Salazar v. NBA*, 118 F.4th 533 (2d Cir. 2024)), WashingtonExaminer.com (*Pileggi*, 146 F.4th 1219), or the CNN App (*Perry*, 854 F.3d 1336).

Dated: July 6, 2026

Respectfully submitted,

By: *___/s/ Tiana Demas_____*

Tiana Demas (6348680)
Matthew Kutcher (6275320)
Jamie Robertson (6345890)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6645
tdemas@cooley.com
mkutcher@cooley.com
jdrobertson@cooley.com

Alexander J. Kasner (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
akasner@cooley.com

*Attorneys for Vimeo.com, Inc.*